UNITED STATES FEDERAL COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **AARON MALDONADO**, *et al*, § § **Plaintiffs,** § § v. § § **MAMMOTH ENERGY SERVICES, INC., COBRA ACQUISITIONS, LLC, HIGHER POWER ELECTRICAL, LLC AND 5 STAR ELECTRIC, LLC** § § § § § § § **Defendants.** § | Case No. 5:21-cv-85-OLG |

**PLAINTIFFS' MOTION FOR COLLATERAL ESTOPPEL**

**I.      Introduction**

After three different rounds of hearings occurring over the course of several weeks in San Juan in 2022 involving 29 linemen, arbitrator Dennis Clifford, a board-certified arbitrator specializing in wage-and-hour matters, found 1) that the exact same pay plan that is at issue in this case violated the FLSA, and 2) that Mammoth Energy Services, Inc., along with Five Star Electric, LLC and Higher Power Electrical, LLC ("Mammoth") jointly employed the 29 Claimants in the arbitration.

A true and correct copy of Mr. Clifford's Arbitration Award is attached hereto as Attachment 1, labeled *Basulto v. Mammoth Energy Serv's, Inc*., Arbitration Nos. 21:A-001 to 21:B-043.  This award was publicly filed in *Summers v. Mammoth*, Case 2023-429-CCL2, as part of the process to have the award confirmed, as Mammoth refused to pay the arbitration award.

While Mammoth attempted to have this document sealed in Gregg County Court, Judge Dulweber denied this request, and the entire award, including the award of attorney's fees, is now public record.  It should be noted that the award is no longer interim, as the fee portion of the

award has since been added to the award.  Judge Dulweber ultimately confirmed the arbitration award, which Mammoth has since appealed.

Both the 29 Claimants in the *Basulto* arbitration ("Claimants") and the 10 Plaintiffs in this litigation ("Plaintiffs") were at one time all before the Court in this matter, until Mammoth notified Plaintiffs' counsel that the majority of the litigants had signed arbitration agreements.  As such, with respect to those individuals who had signed arbitration agreements, the parties agreed to stay the litigation and proceed to arbitration, leaving the remainder in this litigation, which the parties anticipated restarting once the arbitrations finished.  *See* ECF No. 14.

At the conclusion of the *Basulto* Arbitration, Arbitrator Clifford answered the following questions:

1: Whether Mammoth Energy Services, Inc. was a joint employer of Claimants, along with Respondents Higher Power Electrical, LLC and 5 Star Electric, LLC, Attachment 1 at 4, and

2: Whether Mammoth Energy Services, Higher Power Electrical, and 5 Star Electric Paid Plaintiffs on an Hourly or Day-Rate Basis. Attachment 1 at 9.

Both determinations were necessary as the parties vigorously contested both issues, and — just as in this case— "liability turn[ed] on whether Respondents paid Claimants on an hourly basis or a day-rate basis." *Id*. at 9.

After a comprehensive and thorough review of the evidence related to an analysis of employer liability and the compensation plan at issue, Arbitrator Clifford held that 1) Mammoth Energy Services, Inc. was a joint employer of Claimants, *id*. at 8-9, and 2) Mammoth's compensation plan was in fact a day rate plan, not an hourly plan, and that Mammoth had thus failed to pay overtime as required by the FLSA. *Id*. at 9-26.

Both of these determinations should be applied here. Non-mutual issue preclusion (or "offensive collateral estoppel") prevents a party from relitigating an issue it "had a full and fair opportunity to litigate the issue in [an] earlier proceeding." *A.J. Taft Coal Co. v. Connors*, 829 F.2d 1577, 1580 (11th Cir.1987).

There is no question that the *Basulto* arbitration involved the exact same issues this Court must now resolve: determining employer status under the FLSA, and examining the exact same pay practice that was at issue in *Basulto*.

All Plaintiffs have challenged Mammoth's claim that they were only employed by Higher Power and 5 Star, and all Plaintiffs have challenged the overall structure of Mammoth's practice of paying a day rate disguised as hourly and overtime pay.

Each Plaintiff's challenge to this plan is the same; there are no pay practices specific to any lineman that are not common to the group.  Issue preclusion would not, therefore, impact the individual nature of this lawsuit.

## II.     Collateral Estoppel Applies to Issues Decided in Arbitration

It is well settled law that collateral estoppel applies to issues decided by arbitration. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985) ("When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated").

Courts recognize that matters resolved in arbitration can be subject to issue preclusion if the necessary requirements are met, including whether the adjudicated issue was identical, actually litigated, and necessary to the decision. *Carter v. Transport Workers Union of America, Local 556*,

602 F.Supp.3d 956, 2022 WL 1424989 (N.D. Texas, Dallas Division, May 05, 2022); *Universal American Barge Corp. v. J Chem, In*c., 946 F. 2d 1131 (5th Cir. 1991) (A district court, in the exercise of its discretion, may preclude relitigation of issues previously determined in an arbitration if the court finds, under the facts of that case, that the arbitral procedures afforded due process, that the requirements of offensive collateral estoppel are met, and that the case raises no federal interests warranting special protection).

With respect to the use of offensive non mutual issue preclusion, the Fifth Circuit has explained that if a defendant loses an issue in a suit where the issue was actually litigated and necessary to the decision, then a different plaintiff can sue the defendant, identify the defendant's prior loss, and then preclude the defendant from relitigating the issue. *In re Jefferson Par*., 81 F.4th 403, 414-15 (5th Cir. 2023) (citing to *Bradberry v. Jefferson County*, 732 F.3d 540, 548 (5th Cir. 2013). The Fifth Circuit explained that this concept exists because the Supreme Court has determined that "the preferable approach . . . is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane*, 439 U.S. at 331.

**III.    Standard for Issue Preclusion**

Offensive issue preclusion occurs when the "plaintiff seeks to foreclose the defendant from relitigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Midcontinent Broad. Co. v. Dresser Indus., Inc.,* 486 F. Supp. 858, 861 (D.S.D. 1980) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

In determining whether to apply non-mutual collateral estoppel, the Court should consider whether: (1) the issue to be decided is the same as the issue raised in the prior proceeding; (2) the issue was "actually litigated" in the prior proceeding; (3) the issue was a significant, indeed a

4

"necessary," part of the earlier determination; and (4) the party "against whom the earlier decision is asserted … had a full and fair opportunity to litigate the issue in the earlier proceeding." *A.J. Taft Coal Co.*, 829 2 F.2d at 1580; *Manganella v. Evanston Ins. Co.,* 700 F.3d 585, 591 (1st Cir. 2012) (same).

In this case, each element has been met. Even though confirmation of the award has already occurred here, confirmation is not necessary for an arbitration award to result in issue preclusion.[1]

A. The Requirements for Issue Preclusion Have Been Met

1. The Issues in *Basulto* Are the Same as in This Litigation

The issues in this litigation are precisely the same as the issues that were previously litigated in the *Basulto* arbitration.

Mammoth has consistently argued, in both *Basulto*, this case, and all other ongoing and concluded arbitrations, that it only employed a single "wage scale" that qualified as a "hourly plus overtime" plan, while the linemen in *Basulto* and in this litigation contend Mammoth's pay plan was, in fact, a day rate pay plan with no overtime. The *Basulto* award decided the issue of whether Mammoth "paid on a day-rate or hourly basis" *See* Attachment 1 at 9, finding that Mammoth paid a day rate with no overtime.

Mammoth has consistently argued, in both *Basulto*, this case, and all other ongoing and concluded arbitrations, that only Higher Power and Five Star employed the linemen, while the

---

[1] *Wellons v. T.E. Ibberson Co.*, 869 F.2d 1116, 1169 (8th Cir.1989) (affirming grant of summary judgment based on collateral estoppel effect of unconfirmed arbitration award); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir.1997) ("collateral estoppel [applies] to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding the a lack of confirmation of the award"); *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir.1999) (unconfirmed arbitration award has the effect of a final judgment on the merits); *In re Clark*, 411 B.R. 507, 514 (Bankr. S.D. Ga. 2009) ("if the elements of collateral estoppel are met, the doctrine of collateral estoppel could be applied to the arbitration award, notwithstanding the fact that it is unconfirmed"); *Casa Del Mar Ass'n, Inc. v. Gossen Livingston Assocs., Inc.*, 434 S.W.3d 211, 219 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("In Texas, an arbitration award has the same effect as the judgment of a court of last resort for purposes of collateral estoppel.").

linemen in Basulto and this litigation contend that Mammoth Energy Services, and Cobra Acquisitions, LLC, at a minimum, employed the linemen. The *Basulto* award decided whether Mammoth Energy Services, Inc. employed the linemen jointly along with Higher Power and Five Star, concluding that Mammoth Energy Services, Inc. was an employer for purpose of the FLSA. *See* Attachment 1 at 9.

### 2. The Three Issues Decided in *Basulto* Were Actually Litigated.

Whether Mammoth "paid on a day-rate or hourly basis," and whether Mammoth Energy Services, LLC jointly employed the linemen along with Higher Power and Five Star were both issues that were actually litigated. *See* Attachment 1 at 9 (Mammoth Energy Services, Inc. held to be an employer) and 22 (FLSA violation established)

The *Basulto* award specifically noted "the threshold issues [were] 1) whether [Mammoth Energy Services, Inc] was an employer (2) whether Claimants were paid on a day-rate or hourly basis, and (3) whether Respondents paid overtime compensation in accordance with the FLSA." Id. at 3.

The Arbitrator first explained that "The Parties dispute whether Mammoth Energy Services, Inc." was an employer of Claimants. *Id*. at 5.

The Arbitrator also stated that Claimants argued that "they were paid on a day-rate basis" while Mammoth argued the Claimants "were paid on an hourly basis for a targeted number of hours each day." *Id.* at 11. The arbitrator then addressed the parties' arguments on both issues in detail, spending pages 3-9 discussing facts and law related to whether Mammoth was an employer, and pages 9-25 discussing the facts and law related to whether Mammoth's pay practice was hourly with overtime or whether it was a day rate.

Thus, whether Mammoth Energy Services, Inc. was an employer and how Mammoth's compensation plan actually worked was "actually litigated" in *Basulto*.

### 3. The Two Issues Decided in *Basulto* were Critical and Necessary Parts of the *Basulto* Award.

In *Basulto*, the issue of whether Mammoth Energy Services, Inc. was an employer under the FLSA was described by Arbitrator Clifford as one of several "threshold issues," that was an examined in detail over the course of 6 pages of the Award. This was both a critical and necessary part of the Basulto award, as, based on the amount of time, energy and money Mammoth spent fighting this issue, it may very well be that an award against only Higher Power and Five Star is meaningless because it is uncollectible. While such an award might be considered to be a victory, such a victory would be Pyrrhic, at best if there is no money to fund it. In order to ensure that the *Basulto* award can actually be funded, a finding that Mammoth Energy Services, Inc. was also an employer and therefore jointly liable along with Higher Power and Five Star was absolutely critical to the *Basulto* award.

In *Basulto,* liability turn[ed] on whether Mammoth paid Claimants on an "hourly basis or a day-rate basis." Attachment 1 at 9. Arbitrator Clifford even described this as a "threshold issue"—one necessary to establish liability. *Id*. at 3. Additionally, more than half of the award's 30 pages are devoted to deciding this issue. *Id*. at 9-26. Because the issue decided was a critical and necessary aspect of the *Basulto* award, this element of collateral estoppel is clearly met.

### 4. Mammoth Had a "Full and Fair Opportunity to Litigate the Issues" in *Basulto*.

The *Basulto* hearing "took place over three separate sessions in March, May, and November of 2022." See Attachment 1 at 3. In addition, the parties submitted extensive briefing. *Id.* (noting "Plaintiffs submitted one post-hearing brief addressing all of their Claims, and

7

Respondents submitted one post hearing brief addressing all of their defenses. The Parties also submitted responses to the opening briefs. In addition, the Parties submitted briefs regarding alleged supplemental authority from the Sixth Circuit.").

Arbitrator Clifford heard live testimony from both Mark Layton (who has been repeatedly designated as Mammoth's 30(b)(6) witness) as well as Scott Whitsell, President of 5 Star and Higher Power, in addition to deposition testimony from JD Kinsey of Cobra, Alex Kalman of Mammoth Energy, Keith Ellison of Cobra Acquisitions and Missy Davis of Five Star. Arbitrator Clifford also reviewed deposition testimony from Jeff Beagle, Mammoth's Director of Human Resources. *Id*. at 5, 8. He examined payroll, benefit and time records from dozens of workers, in addition to reviewing offer letters, company policies, and internal company emails and other time and pay documents explaining Mammoth's pay practices as well as Mammoth's control over Claimants. *Id*. 9-15.

Arbitrator Clifford examined and appropriately rejected Mammoth's claim that was not an employer under the FLSA, including arguments that it had no employees, and therefore could not have employed Claimants. *Id.* at 3-9.

Arbitrator Clifford also considered and rejected Mammoth's "discretionary bonus," "time worked," and "alleged on-call time" arguments in determining Mammoth created and implemented a day-rate compensation plan. *Id.* at 9-26. Therefore, it is clear Mammoth had a "full and fair" opportunity to litigate all three issues.

### 5. Any Fairness Factors Also Weigh in Favor of Issue Preclusion.

Assuming the requirements for issue preclusion are met, certain "fairness" factors are applied to determine whether/how to apply collateral estoppel. First, because "a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if

the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane Hosiery Co.*, 439 U.S. at 330.  It is therefore relevant to consider whether a claimant simply sat on the sidelines while the prior action proceeded.  *Id*. However, this concern does not apply where the party seeking preclusion "could not have joined [the original action] even had he so desired." *Parklane Hosiery Co.*, at 331–32.  While theoretically the ten remaining litigants could have attempted to participate in the Puerto Rico arbitrations, even had such a decision been made, there would have been no legal basis to supporting their inclusion in the arbitration without a signed arbitration agreement. Additionally, Mammoth's arbitration agreement required each Claimant to proceed *individually*.  Because there is no indication Claimant could have joined the earlier action, this factor is not relevant. *Parklane Hosiery Co*., at 331–32.

Finally, the mere fact that a plaintiff chose to sue separately rather than to join an existing action is not disqualifying.  *See McLendon v. Cont'l Grp., Inc*. 660 F. Supp. 1553, 1563 (D.N.J. 1987).  Courts respect the right of a party to pursue its own litigation strategy.  *Id.* at 1564.  As long as the thrust of the litigation strategy is not a "wait and see" approach, offensive non-mutual issue preclusion is permissible.

Second, consideration should be given to whether the party to be estopped could foresee subsequent litigation such that it would have an "incentive to litigate … fully and vigorously." *Parklane Hosiery Co*., 439 U.S. at 332.  Here, Mammoth has known for years that there were additional claims related to these issues, as Mammoth has been litigating these cases for, quite literally, years. There cannot be any reasonable argument that Mammoth did not have every incentive to litigate *Basulto* vigorously.  This is especially true when one considers that Mammoth was fully aware that *Basulto* would be the first award and/or verdict in a wave of litigation it was

9

facing. Had Mammoth prevailed, such a result would certainly have been used by Mammoth to extract concessions in settlement negotiations.

Finally, it is worth considering whether the prior determination (here, the *Basulto* award) was itself "inconsistent with any previous decision." *Parklane Hosiery Co.*, 439 U.S. at 332. It is not. There were no determinations contrary to the decision issued with respect to the 29 *Basulto* Plaintiffs, as the *Basulto* award was the first arbitration award issued in this litigation. Thus, the "fairness" factors all weigh in favor of applying collateral estoppel.

As shown above, the *Basulto* award is entitled to preclusive effect in this litigation. The core issues in this case—whether Mammoth's "overall compensation plan applicable to the workforce" was to pay hourly plus overtime or on a day-rate basis, and whether Mammoth Energy Services, Inc. jointly employed the linemen at issue—have been previously litigated, decided, and a final award issued. *See* Attachment 1 at 30 ("This is a Final Award") and the attached Fee and Cost award at 11 ("the Award issued on March 8, 2023 was intended to be and was a final award on all issues except costs and fees.").

Mammoth paid a day-rate, and Mammoth Energy Services, Inc. jointly employed the linemen. Therefore, the Court should exercise discretion and preclude Mammoth from relitigating these issues.

For the above reasons, the *Basulto* award findings that 1) Mammoth paid a day rate in violation of the FLSA, 2) that Mammoth Energy Services, Inc., along with Five Star Electric, LLC and Higher Power Electrical, LLC jointly employed the 29 Claimants in the arbitration should not be relitigated in this matter, and both of these determinations should be applied in the current litigation; Mammoth should not be allowed to continue relitigating issues that have already been

decided, and that it has had "a full and fair opportunity to litigate the issue in [an] earlier proceeding." *A.J. Taft Coal Co. v. Connors*, 829 F.2d 1577, 1580 (11th Cir.1987).

Respectfully Submitted,

**WELMAKER LAW, PLLC**

/s/ Douglas B. Welmaker
Douglas B. Welmaker
State Bar No. 00788641
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on August 2, 2024.

/s/ Douglas B. Welmaker
Douglas B. Welmaker