**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **AARON MALDONADO**, *et al.*, | § |
| | § |
| *Plaintiffs*, | § |
| | § |
| v. | §   **Case No. 5:21-cv-00085** |
| | § |
| **MAMMOTH ENERGY SERVICES,** | § |
| **INC., COBRA ACQUISITIONS, LLC,** | § |
| **HIGHER POWER ELECTRICAL, LLC,** | § |
| **and 5 STAR ELECTRIC, LLC,** | § |
| | § |
| *Defendants*. | § |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR COLLATERAL ESTOPPEL**

Defendants Mammoth Energy Services, Inc. ("Mammoth"), Cobra Acquisitions, LLC, ("Cobra"), Higher Power Electrical, LLC ("HPE"), and 5 Star Electric, LLC ("5 Star") (collectively, "Defendants") respond to Plaintiffs' Motion for Collateral Estoppel [ECF No. 42] ("Motion") as follows:

## I.      INTRODUCTION

By seeking the application of collateral estoppel, Plaintiffs essentially attempt to profit from the same scenario that the Supreme Court cited in *Parklane Hosiery Co., Inc. v. Shore* to demonstrate when offensive use of collateral estoppel would be unfair to a defendant:

> [A] railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to recover.

439 U.S. 322, 330 n.14 (1979).

Here, like in Professor Currie's example, Plaintiffs ask the Court to apply collateral estoppel based on the decision of <u>one</u> Arbitrator, even though at least <u>five</u> different Arbitrators

previously denied near-identical motions for application of collateral estoppel based on the same exact March 8, 2023 Interim Award ("Award") entered in *Basulto, et al. v. Mammoth Energy Services, Inc., et al.*, AAA Arbitration Nos. 21:A-001 to 21:B-043 (the "*Basulto* Arbitration"), and <u>four</u> different Arbitrators dismissed similar claims against Defendants entirely.[1]

In the *Basulto* Arbitration, a group of 29 former employees initiated arbitrations against Defendants governed by arbitration agreements requiring them to arbitrate their claims individually and keep all related proceedings, evidence, and orders confidential ("Arbitration Agreements"). *See, e.g.*, Exhibit 1, Arbitration Agreement Example at 3. On March 9, 2023, counsel in this suit—who also represented the *Basulto* Claimants—filed the Award in a Texas state county court for the alleged purpose of seeking confirmation of the Award. The Award was initially filed on behalf of only one claimant (Terrence Summers).[2] Despite the parties' contract requiring confidentiality, the document was not filed under seal.

On March 14, 2023, within a mere five days after the Award had been publicly (and improperly) filed, another group of claimants (represented by counsel involved in the *Basulto* matter as an expert on attorneys' fees) began filing their own, independent motions for issue preclusion in other individual arbitrations relying on the same exact Award. Certain Defendants here[3] were also parties in those arbitrations.[4] Defendants immediately advised the claimants'

---

[1] Because the parties to those arbitrations agreed to keep the proceedings confidential, Defendants have not attached to this Response the prior arbitral orders in companion cases denying claimants' motions for issue preclusion or granting summary judgment in Defendants' favor. However, if the Court desires to review those orders, Defendants' counsel can provide it for *in camera* review.

[2] The state trial court action is styled *Terrence Summers v. Mammoth Energy Services, Inc., et al.*, Cause No. 2023-429-CCL, in County Court at Law No. 2, Gregg County, Texas.

[3] Some claimants in the *Basulto* Arbitration worked only for 5 Star, while others worked only for HPE. But, while both 5 Star and HPE were included as respondents in the *Basulto* Arbitration pursuant to the parties' agreement, *see* ECF No. 42-1 at ¶ 6, the same was not true in the individual arbitrations where each claimant named only their respective employer—*i.e.*, either 5 Star *or* HPE.

counsel that the Award is confidential pursuant to the parties' Arbitration Agreements, and at least five different Arbitrators eventually denied the claimants' motions for issue preclusion on confidentiality and other grounds. Nevertheless, claimants' counsel continued to file the Award in other matters, and Plaintiffs' counsel now files it here—despite the fact that all parties are acutely aware of their confidentiality obligations under the Arbitration Agreements.[5] Even worse, the issues in the *Basulto* Arbitration are currently on appeal.[6]  Plaintiffs' back-door tactics to apply arbitral decisions in other cases to this one should not be condoned, and the Motion should therefore be denied.

Aside from the inequity of applying offensive collateral estoppel in this case, Plaintiffs' Motion should be denied because (1) Plaintiffs failed to carry their burden of establishing the application of collateral estoppel; (2) the relevant issues have not been fully and finally litigated because the Award and *Basulto* Arbitration are currently on appeal; (3) the issues here are not identical to those in the *Basulto* Arbitration; and (4) the application of collateral estoppel would unfairly prejudice Defendants, including because the Claimants in the *Basulto* Arbitration agreed to arbitrate their cases individually (and confidentially). The Court should therefore deny Plaintiffs' Motion and, in the interests of justice, strike it from the record entirely.

---

[5] *See* Ex. 1, at 3.

[6] The case is now pending on appeal as *Mammoth Energy Services, Inc., et al. v. Terrence Summers*, Case No. 06-24-00010-CV, in the Court of Appeals for the Sixth Appellate District of Texas (the "*Summers* Appeal"). The court of appeals issued an order on August 2, 2024, advising that the case will be set for oral argument. The Appellants' reply brief is presently due on September 9, 2024.

## II.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard

As an initial matter, Plaintiffs are incorrect in arguing that "[i]t is well settled law that collateral estoppel applies to issues decided by arbitration." Motion at 3.[7] While it is true that some courts have permitted the application of collateral estoppel to arbitral decisions, it is far from "well settled law" that they are required to do so. Indeed, the Supreme Courts of California and Utah have both categorically held that private arbitration awards "cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree." *Vandenberg v. Superior Court*, 982 P.2d 229, 240 (Cal. 1999) ("[W]e are compelled to conclude that a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agree, in the particular case, that such a consequence should apply."); *Buckner v. Kennard*, 99 P.3d 842, 846 (Utah 2004) ("we hold that a private arbitration award does not have nonmutual collateral estoppel effect unless the parties expressly provide for such preclusive effect beforehand"). Moreover, "[a] district court has 'broad discretion' to decide whether to apply the doctrine." *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) (quoting *Univ. Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991)).

Turning to the elements, offensive use of collateral estoppel "is appropriate where four conditions are met: (i) The issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (ii) The issue must have been fully and vigorously litigated in the prior action; (iii) The issue must have been necessary to support the judgment in the prior case; and (iv) There must be no special circumstance that would render [estoppel] inappropriate or unfair." *Kariuki v.*

---

[7] Plaintiffs cite *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985) in support of this argument. However, *Greenblatt* is distinguishable because it concerned the issue of "who has the power to determine the preclusive effect of a prior arbitration award on a *nonarbitral* issue properly before the court," such as a federal RICO claim. *See Tortorich v. Musso*, No. 07–3912, 2007 WL 3244396, at *2 n.19 (E.D. La. Nov. 1, 2007) (discussing and citing *Greenblatt*) (emphasis added); *see also Greenblatt*, 763 F.2d at 1360.

*Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (quotation marks omitted). With regard to the fourth element, "considerations of fairness are of great importance in determining when use of offensive collateral estoppel should be permitted." *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1170 (5th Cir. 1981).

"The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992); *In re King*, 103 F.3d 17, 19 (5th Cir. 1997); *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986) ("The party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention, particularly where the record is ambiguous or confusing."). Importantly, "***[i]t is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated***." *Clark*, 966 F.2d at 1321 (emphasis added); *In re King*, 103 F.3d at 19 ("The party asserting issue preclusion bears the burden of proof, and hence would have the burden of bringing forward an adequate state-court record.") (internal citation omitted). Thus, Fifth Circuit "cases allowing consideration of res judicata or collateral estoppel on appeal do so only if all of the relevant facts are contained in the record and are uncontroverted." *Energy Development Corp. v. St. Martin*, 296 F.3d 356, 363 (5th Cir. 2002) (quotation marks omitted). "[I]f reasonable doubt exists as to what was decided in the first action, the doctrine of *res judicata* should not be applied." *GLF Const. Corp. v. LAN/STV*, 414 F.3d 553, 555 n.2 (5th Cir. 2005) (quoting *In re Braniff Airways, Inc.*, 783 F.2d at 1289); *Crafty Productions, Inc. v. Fuqing Sanxing Crafts Co. Ltd.*, 839 Fed. App'x 95, 98 n.2 (9th Cir. 2020) ("collateral estoppel cannot apply without a record showing the specific issues litigated in arbitration").

**B.    The Court Should Exercise its Discretion to Decline to Give the Award Any Preclusive Effect**

Relying on the decision of a single arbitrator in the *Basulto* Arbitration, Plaintiffs seek to apply offensive collateral estoppel to avoid having to adjudicate the issues of (1) whether they were paid on

an hourly or day rate basis, and (2) whether Mammoth was a joint employer of Plaintiffs along with HPE and 5 Star. However, by failing to adduce sufficient record evidence by which the Court can determine whether the relevant issues in the *Basulto* Arbitration were identical and fully litigated, Plaintiffs have failed to carry their burden of establishing the required elements for offensive collateral estoppel. Nor can Plaintiffs establish that the relevant issues were fully and finally litigated in the *Basulto* Arbitration because that decision—and its holding regarding the joint employer issue—is currently on appeal. Furthermore, the issues are not identical because the *Basulto* Arbitration involved different claimants, each of whom were employed by a different Defendant (*i.e.*, either HPE or 5 Star). Finally, the application of collateral estoppel here would unfairly prejudice Defendants. The Motion should therefore be denied for one or more of the following independent reasons.

1.      **Plaintiffs' Motion should be denied because they failed in their burden to produce a sufficient record and show, with clarity and certainty, what was determined by the Award.**

Again, Plaintiffs' burden in the instant Motion is to produce a sufficient record and show, with "clarity and certainty," what was determined by the Award. *Clark*, 966 F.2d at 1321; *In re Braniff Airways, Inc.*, 783 F.2d at 1289. Plaintiffs fail to do so here. Instead of bringing forward an adequate record upon which this Court can determine the identity of issues and whether they were fully and fairly litigated in the *Basulto* Arbitration—the first two required elements—Plaintiffs simply introduce the Award and ask this Court to blindly apply it against Defendants. *See Clark*, 966 F.2d at 1321 ("[i]t is not enough that the party introduce the decision of the prior court"). Specifically, Plaintiffs do not produce *any* briefing or evidence from the *Basulto* Arbitration that ostensibly supported the Award; nor are they forthcoming about the fact that Defendants have since appealed the Award, which is currently pending, including by challenging the Award's factual determinations.[8] Therefore, this

---

[8] *See supra* note 6.

Court has had no opportunity to consider and compare the relevant facts and evidence in this case with that of the *Basulto* Arbitrations—including, but not limited to, evidence regarding the hours Plaintiffs worked; what representations were allegedly made to Plaintiffs in their offer letters, at orientation, or in their payroll records; and Plaintiffs' individual roles, job duties, and relevant time periods of their employment.

In other words, Plaintiffs attempt to have this Court apply collateral estoppel when (1) the factual record proffered by Plaintiffs is inadequate, and (2) the relevant facts are controverted. *Cf St. Martin*, 296 F.3d at 363. Thus, because the relevant facts are not before this Court—or, even if they were, because the relevant facts are controverted[9]—Plaintiffs have failed to carry their burden in the Motion. *See, e.g.*, *id.* ("This factual dispute precludes application of issue preclusion in this case. Our cases allowing consideration of res judicata or collateral estoppel on appeal do so only if 'all of the relevant facts are contained in the record and are uncontroverted.' As that is not the case here, we decline to consider the defendants' assertion of res judicata or collateral estoppel at this stage of the litigation."); *Alvarado v. State Farm Mut. Auto. Ins. Co.*, No. 5-22-CV-00392-FB-RBF, 2023 WL 5512244, at *7 (W.D. Tex. Aug. 9, 2023) (declining to apply collateral estoppel because, "[w]ithout more information about the litigation and settlement between Alvarado and Johnson, the Court is unable to determine if the issues of damages and liability were actually litigated"); *Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 590 (S.D. Tex. 2011) ("it is unclear from the limited record presented to us whether the issue of Jones's scope of employment was at stake in the OWCP proceedings and whether it was actually litigated. . . . Thus, the KBR Defendants have not met their burden in establishing that the stipulations in the OWCP proceedings have preclusive effect in this Court."). The Court should therefore decline to apply offensive collateral estoppel for that reason alone.

---

[9] *See infra* Part II.B.2.

The Motion also fails on other procedural grounds. First, it is unclear whether Plaintiffs may simply "move for collateral estoppel" rather than utilizing one of the dispositive motions provided in the Federal Rules of Civil Procedure. Indeed, by framing the Motion as a "Motion for Collateral Estoppel," Plaintiffs might be attempting to avoid the need to proffer evidence and follow the procedural requirements for a motion for summary judgment, *see* Fed. R. Civ. P. 56(c), which would normally be the vehicle for applying collateral estoppel.[10] Such an outcome cannot be countenanced and would unfairly prejudice Defendants. The Court should therefore deny Plaintiffs' Motion for this reason as well. *See Parklane Hosiery*, 439 U.S. at 323 ("where the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel").

### 2.    The issues were not fully and finally litigated in the prior action because they are currently on appeal.

For offensive collateral estoppel to apply, the second element requires that the defendant had a full and fair opportunity to litigate the first action while taking into account any procedural differences. *Parklane Hosiery*, 439 U.S. at 332. Here, Plaintiffs cannot establish the second required element because the *Basulto* Arbitration Award is currently on appeal in the Court of Appeals for the Sixth Appellate District of Texas.[11] Thus, the issues have not been fully and finally litigated.

"[T]he general rule is that if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court." *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981). In the *Summers* Appeal, Defendants are currently challenging the Award's finding that (1) Defendants willfully violated the FLSA by paying Plaintiffs on a day-rate

---

[10] *See, e.g.*, *Acceptance Indem. Ins. Co. v. Maltez*, 617 F. Supp. 2d 467, 473 n.29 (S.D. Tex. 2007) ("although the Fifth Circuit has not addressed the necessity of affirmatively pleading offensive collateral estoppel, the doctrine must be pled no later than plaintiff's motion for summary judgment") (quotation marks and alterations omitted).

[11] *See supra* note 6.

basis with knowledge that their pay practices were unlawful, and (2) Mammoth was a joint employer with HPE and 5 Star. *See* Exhibit 2, Appellants' Brief at 45–60 (pp. 27–42). If the second issue is resolved in favor of Defendants, the claims against Mammoth will be dismissed. *See id.* at 37. But, if the first issue is ultimately resolved in favor of Defendants, the *Basulto* Arbitration will be dismissed entirely as barred by the statute of limitations and the underlying violations can no longer support issue preclusion as there is no longer a favorable judgment. *See id.* at 27.

Here, Plaintiffs seek to apply collateral estoppel to the issue of whether Mammoth was Plaintiffs' joint employer along with HPE and 5 Star and whether Plaintiffs were paid a day rate in violation of the FLSA. Motion at 2. Because those issues are on appeal, it has not been "fully and finally" litigated within the meaning of the second collateral estoppel element. Plaintiffs therefore fail on the second requirement for collateral estoppel, and the Court should decline to apply it for that reason as well. *See In re Braniff Airways, Inc.*, 783 F.2d at 1289 ("if reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied.").

### 3. There is no identity of issues because the *Basulto* Arbitration involves different claimants with different positions and wage claims.

The first element required to apply offensive collateral estoppel—that the issue under consideration in the later litigation is identical to the issue litigated in a prior action—also is not supported here. *Kariuki*, 709 F.3d at 506. Collateral estoppel does not apply unless "the facts and the legal standard used to assess [the relevant issues] are the same in both proceedings." *Baros v. Texas Mexican Ry. Co.*, 400 F.3d 228, 233 (5th Cir. 2005).

First, the 29 Claimants in the *Basulto* Arbitration are not the same individuals as Plaintiffs. Each of the Claimants in the *Basulto* Arbitration held a different position and were paid on a different wage scale, depending on their skill level, than each of the Plaintiffs here. Furthermore, the Arbitrator in the *Basulto* Arbitration reviewed and based his decision on the specific pay stubs

and payroll records of those specific Claimants, which are not the same records that would be considered in this matter (and, again, have not been placed before the Court in support of Plaintiffs' Motion). Similarly, the Arbitrator's findings in *Basulto* were based on the testimony of that particular grouping of Claimants regarding their hours worked and representations made to them by unidentified "agents" during the recruiting and orientation process.[12] Because the various Claimants attended orientation in different locations and were recruited at different times by different individuals, it is impossible to know whether the Plaintiffs here would have received those same "representations," if any (especially when Plaintiffs present no evidence of the same). Simply put, a finding regarding the manner of payment to one set of Claimants who may have worked for a different grouping of Defendants, during a different time period, in a different location, holding different job duties, and with different recruiters, supervisors, or orientations should not preclude Defendants in this matter from defending claims against them by the plaintiffs in a separate proceeding.

For example, the Fifth Circuit in *Hardy v. Johns-Manville Sales Corp.* determined that it was an abuse of discretion to apply offensive collateral estoppel in a personal injury case brought by multiple workers against various product manufacturers for illnesses related to asbestos exposure. 681 F.2d 334, 343–45 (5th Cir. 1982). The Fifth Circuit ultimately concluded that a determination that some asbestos insulation products were dangerously defective could not be given preclusive effect because it was not clear that the issues were the same. *Id.* at 346–48. Some

---

[12] For example, the Western District of Texas previously denied a motion for summary judgment on the issue of hourly versus day rate filed by the plaintiffs in a companion case, reasoning that "there is conflicting evidence about whether Storm Workers worked more or less than the sixteen hours built into the hourly rate model by Defendants" and that, "[i]f they did not, the backwards-calculated hourly and overtime rates may not run afoul of the FLSA." *Cantu v. Mammoth Energy Servs.*, No. SA-19-CV-615-DAE, 2023 WL 3681704, at *7 (W.D. Tex. Feb. 28, 2023).

of the plaintiffs had used the products during different periods, the adequacy of the warnings given would vary depending on the plaintiffs' position, and the products at issue varied, with some potentially requiring different warnings. *Id.* Here, as in *Hardy*, the issues are not identical for purposes of collateral estoppel because Plaintiffs worked (1) for either HPE or 5 Star (but not both); (2) at different time periods; (3) in different roles with different job duties; (4) at different levels of pay; and (5) with different recruiters, supervisors, and orientations.

There are also important procedural differences that preclude the application of collateral estoppel. The Claimants in the *Basulto* Arbitration agreed to submit their claims to arbitration— an agreement that does not exist here—and that case was decided by a single Arbitrator rather than a judge or jury. Compounding the disparity between the two actions is the fact that there were other procedural stipulations in the *Basulto* Arbitration, including relating to the hours worked, that do not exist in this case.

For these reasons, it would be improper to apply offensive collateral estoppel to preclude Defendants from litigating whether Mammoth is a joint employer in *this* case, and whether Defendants paid *these* particular Plaintiffs on a day rate versus hourly with overtime. *See, e.g.*, *Hardy*, 681 F.2d at 343–45; *Asahi Glass Co., Ltd. v. Toledo Engineering Co., Inc.*, 505 F.Supp.2d 423, 431–34 (N.D. Ohio 2007) (issues resolved in arbitration between manufacturer and licensee were not identical for purposes of issue preclusion). Plaintiffs' attempt to invoke offensive collateral estoppel in this case should therefore be rejected.

### 4. The application of collateral estoppel here would unfairly prejudice Defendants.

The application of offensive, non-mutual collateral estoppel in this case would severely prejudice Defendants and undermine the core principles of arbitration. Plaintiffs' attempt to apply collateral estoppel therefore fails on the fourth element for the reasons below.

###### a. *Plaintiffs should not be allowed to benefit from "wait and see" tactics.*

The United States Supreme Court has repeatedly approved of individual arbitration as a viable and less costly alternative to judicial proceedings. *See AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011). However, if one arbitration award—with limited appellate review available—can be used to determine liability for other claimants and/or plaintiffs, it would no doubt have a chilling effect on any defendant's willingness to ever engage in the arbitral process. One commentator has noted that application of the doctrine could have lasting implications:

> Under such conditions, reasonable parties will conclude that the principal benefits of arbitration—informality, expediency, simplicity, and particularly the absence of what is normally seen as costly and time-consuming judicial review—have become significant liabilities. Rather than entrust a decision on a monumental issue of law to an arbitrator whose ruling is not subject to meaningful judicial review, parties may choose to forego arbitration altogether rather than face the disconcerting prospect of implicitly litigating in every individual arbitration hundreds if not thousands of attendant cases. This result would achieve the very end that the [Federal Arbitration Act ("FAA")] was intended to combat—the evisceration of arbitration as a viable means of alternative dispute resolution, to the detriment of an already overburdened judicial system.

*See* Zachary F. Fasman, *Offensive, Non-Mutual Collateral Estoppel in Arbitration*, 34 ABA Journal of Labor & Employment Law, 218 (2020).

Furthermore, as the Supreme Court recognized in *Parklane Hosiery*, "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does." *Parklane Hosiery*, 439 U.S. at 329–30. While defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries and encourages the joinder of all defendants in the same action, offensive use of collateral estoppel creates precisely the opposite incentive. *Id.* Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude in the hope that the first action by another plaintiff will result in a favorable judgment. *Id.* For that reason, the Supreme Court in *Parklane Hosiery* held

that "allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330

That is precisely the situation presented here. This lawsuit was filed in February 2021 and stayed in November 2021 pending the arbitrations of other Claimants represented by the same counsel. *See* ECF No. 16. The *Basulto* Arbitration Award was then issued on March 8, 2023, *see* Award at 41, and the stay in this case was lifted on April 10. Less than four months later, Plaintiffs filed the instant Motion seeking to skirt their evidentiary obligations and unfairly impose upon Defendants the findings of a *single* arbitrator—which are currently on appeal—related to a different group of workers who worked at different time periods and for different entities, and without providing the Court with sufficient record evidence to analyze the issues and arguments. Meanwhile, at least <u>four</u> other arbitrators in <u>eight</u> different arbitrations have previously granted summary judgment <u>in favor of Defendants</u> on similar claims to the ones here.[13] Plaintiffs are therefore attempting to become plaintiff number 27 in Professor Currie's example—riding the coattails of plaintiff number 26 while avoiding the same fate as plaintiffs 1 through 25.[14] Moreover, if Defendants eventually prevail on appeal after Plaintiffs successfully invoke offensive collateral estoppel in this case, the unfairness inherent in applying offensive collateral estoppel would be further compounded. Plaintiffs' efforts to undermine and unfairly prejudice Defendants should therefore be rejected.

---

[13] Arbitrator Jorge P. Sala granted summary judgment in favor of the respondents, including Mammoth, in AAA Case Nos. 01-19-0002-5489, 01-19-0002-5524, and 01-19-0002-5526; Arbitrator D. Andrew did the same in AAA Case Nos. 01-19-0002-5545, 01-19-0002-5551, and 01-19-0002-5607; Arbitrator Jose W. Cartagena did the same in AAA Case No. 01-19-0002-5508; and Arbitrator Jose M. Hampton did the same in AAA Case No. 01-19-0002-5574.

[14] *See supra* Part I.

> ### b.   The parties to the Arbitration Agreements contracted to keep the Award confidential and it cannot fairly be used in this proceeding.

Use of offensive collateral estoppel would also be unfairly prejudicial because Defendants and the *Basulto* Claimants specifically contracted to keep the Award and their arbitral proceedings confidential. While the actions of Plaintiffs' counsel have since thwarted that contractual intent, the terms of the Arbitration Agreement and federal law clearly required that the Award be treated as confidential. As a matter of fairness, the Award should therefore be excluded from consideration in any matter other than the *Basulto* Arbitrations—including this one.

Plaintiffs' counsel is no doubt aware of the terms of the Arbitration Agreements that the 29 *Basulto* Claimants signed. Specifically, the Dispute Resolution section of the Arbitration Agreements provides that it is governed by the FAA and that "***[a]ny proceedings, discovery, evidence and/or award rendered during the arbitration shall remain confidential***." Ex. 1, at 3 (emphasis added). Federal courts—including the Fifth Circuit—respect and enforce confidentiality provisions in arbitration agreements. *See, e.g.*, *ITT Educ. Servs. v. Arce*, 533 F.3d 342, 345–47 (5th Cir. 2008) (finding that clause in contract that provided that "[a]ll aspects of the arbitration proceeding, and any ruling, decision or award by the arbitrator, will be strictly confidential" was part of arbitration clause and therefore severable and separately enforceable); *Iberia Credit Bureau, Inc. v. Cingular Wireless,* 379 F.3d 159, 175–76 (5th Cir. 2004) ("While the confidentiality requirement [in the arbitration agreement] is probably more favorable to the cellular provider than to its customer, the plaintiffs have not persuaded us that the requirement is so offensive as to be invalid."). In fact, the Fifth Circuit has issued injunctive relief to prevent dissemination of confidential arbitration information for use in other proceedings. *See, e.g.*, *Arce*,

533 F.3d at 345–47.[15] Thus, federal law contemplates that the Arbitration Agreements' confidentiality provision should have been enforced.

Despite admonitions from Defendants' counsel that the Award should be confidential, Plaintiffs' counsel ignored the correspondence and filed the Award in a Texas state county court on March 9, 2023.[16] The Award was not filed under seal despite the Arbitration Agreement's confidentiality provisions. Since learning of the filing, Defendants have made every attempt to address the wrongful disclosure and permanently seal the Award, while Plaintiffs' counsel has continued filing the Award in this and other matters. Plaintiffs should not be permitted to benefit from their counsel's improper disclosure of confidential information and blatant disregard for Defendants' rights and his clients' obligations. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Bobrick Washroom Equip., Inc.*, No. 3:18-CV-00094, 2021 WL 6072707, at \*6–7 (M.D. Penn. Dec. 23, 2021) (one claimant's disclosure of arbitration award in a public filing did not remove the confidential nature of the document when it was rendered confidential by the parties' express contract). The Court should therefore decline to consider Plaintiffs' Motion and exercise its discretion to strike it from the record entirely. *See, e.g.*, *id.* at \*6–7 (striking confidential information from arbitration from record).

---

[15] Other circuits have also followed the Fifth Circuit in recognizing the enforceability of confidentiality provisions in arbitration agreements. *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (following *Iberia*); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008) (following *Iberia*). The validity of confidentiality provisions has even been approved in the employment context. *See Ali v. J.P. Morgan Chase Bank, N.A.*, 647 Fed. App'x 783, 785–86 (9th Cir. 2016) (deciding that it was not unconscionable to enforce an arbitration agreement's confidentiality provision where employee argued that the provision would unfairly disadvantage other, potential plaintiffs); *see also Taylor v. Prudential Ins. Co.*, 91 Fed. App'x 746, 747 (7th Cir. 2003) (affirming the district court's conclusion that "the plaintiff should be bound by her agreement to keep the [arbitration] proceedings confidential...").

[16] *See supra* note 2.

    c. ***Application of offensive collateral estoppel based on the* Basulto *Arbitration Award is precluded by the Arbitration Agreements' collective action waivers.***

  Application of offensive collateral estoppel here would also unfairly prejudice Defendants because the *Basulto* Claimants waived collective action procedures and agreed to arbitrate their claims individually. As a matter of fairness, any resulting award should therefore affect only those Claimants. "In individual arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–85 (2019). The FAA therefore "requires courts to enforce covered arbitration agreements according to their terms." *Id.* at 178. As a result, collective action waivers in employment agreements—"including terms providing for individualized proceedings"—are enforceable. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 511–12 (2018).

  Here, it is undisputed that the Arbitration Agreements expressly require "individual arbitration" of all claims and preclude arbitration on a "representative basis." Ex. 1, at 2. Specifically, the Arbitration Agreements provide:

> [T]he arbitrator shall not have the right to conduct any arbitration on a class, collective or representative basis. All arbitrations shall be conducted as individual claims and each resolved in a single arbitration between the employee and the Company. ***The Company and employee intend that all disputes shall be resolved by an arbitrator selected by the Company and the employee to arbitrate their individual claims and no other, even identical, disputes with a third-party or other current or former employee of the Company***.

*Id*. at 1 (emphasis added). Given the fact that the Arbitration Agreements require the arbitration of only "individual claims" and preclude collective claims, it is clear that Defendants did not agree to allow the adjudication of an issue in another dispute to be applied to the resolution of the issues

in this case; indeed, the contract effectively prohibits it.[17] Otherwise, the collective action waivers in the Arbitration Agreements—which Defendants and the *Basulto* Claimants explicitly agreed to—would be rendered meaningless and any proceedings related to the same would effectively proceed on a collective basis. Thus, the application of offensive collateral estoppel would undermine not only the benefits of arbitration generally, but also the plain language of the Arbitration Agreements. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686–87 (2010) (imposing class arbitration on parties who have not agreed to authorize class arbitration is inconsistent with the FAA).

Moreover, the Arbitration Agreements' confidentiality provision further precludes Plaintiffs' reliance on collateral estoppel. Again, courts enforce confidentiality provisions in arbitration agreements. Because the Award and *Basulto* Arbitration proceedings should have been kept confidential, the information this Court needs to decide whether to apply issue preclusion should have been unavailable. *See, e.g.*, *Donelon v. Herbert Clough, Inc.*, No. 2006 WL 8436296, 2006 WL 8436296, at *4-6 (M.D. La. Aug. 18, 2006) (denying motion to compel discovery of arbitration material subject to confidentiality agreement). As a matter of fairness, the Court should therefore decline to consider the Award and deny Plaintiffs' Motion.

### d. *If collateral estoppel applies to these facts, it actually supports denying Plaintiffs' Motion.*

At least <u>five</u> different Arbitrators have considered and denied near-identical motions for collateral estoppel filed against Defendants in other matters. Paradoxically, then, if the concept of issue preclusion forecloses Defendants' relitigating the joint employer and day rate issues decided in one arbitration, it should also preclude this Court from granting Plaintiffs' Motion where near-

---

[17] *See also* Restatement (Second) of Judgments §84(4) ("[i]f the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.").

identical motions were previously denied in at least five other arbitrations. Otherwise, Defendants would be subjected to the offensive use of collateral estoppel but precluded from defensively doing the same. Needless to say, such a result would be unfairly prejudicial to Defendants.

Moreover, to date Plaintiffs' arguments on collateral estoppel have accomplished nothing other than to needlessly waste the parties' resources. And, again, at least <u>four</u> different Arbitrators in <u>eight</u> different arbitrations have considered similar wage claims against Defendants and granted summary judgment against those Claimants. Plaintiffs' argument here therefore cuts both ways. Thus, to avoid manifest injustice to Defendants, the Court should deny Plaintiffs' Motion and strike it from the record entirely.

### III.     CONCLUSION

Based on the foregoing, Defendants request that Plaintiffs' Motion be denied with prejudice and stricken from the record and the Court's public docket.

**DATED:**  August 23, 2024                    Respectfully submitted,

                              PORTER HEDGES LLP

                              By:  _/s/ William R. Stukenberg_
                              William R. Stukenberg, *Attorney-in-Charge*
                              Texas Bar No. 24051397
                              Federal I.D. No. 55792
                              1000 Main Street, 36th Floor
                              Houston, Texas 77002
                              Telephone: (713) 226-6611
                              Facsimile:  (713) 226-6211
                              wstukenberg@porterhedges.com

                              ***Attorney-in-Charge for Defendants***
                              ***Mammoth Energy Services, Inc.***
                              ***d/b/a Cobra Energy, 5-Star and***
                              ***Higher Power Electrical, LLC***

Of Counsel:

M. Harris Stamey
State Bar No. 24060650
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6619
Facsimile: (713) 226-6219
hstamey@porterhedges.com

Jamie L. Houston
State Bar No. 24097847
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6608
Facsimile: (713) 226-6208
jhouston@porterhedges.com

Emil M. Sadykhov
State Bar No. 24110316
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6720
Facsimile: (713) 226-6320
esadykhov@porterhedges.com

***Attorneys for Defendants***
***Mammoth Energy Services, Inc.***
***d/b/a Cobra Energy, 5-Star and***
***Higher Power Electrical, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via CM/ECF filing on August 23, 2024.

/s/ *William R. Stukenberg*
William R. Stukenberg