# EXHIBIT 2

ACCEPTED
06-24-00010-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/31/2024 6:26 PM
DEBBIE AUTREY
CLERK

No. 06-24-00010-CV

---

# Court of Appeals
## Sixth Appellate District
## State of Texas

---

**MAMMOTH ENERGY SERVICES, INC., HIGHER POWER ELECTRICAL, LLC
AND 5 STAR ELECTRIC, LLC,**

*Appellants,*

v.

**TERRENCE SUMMERS, ET AL.,**

*Appellees.*

---

On Appeal from County Court at Law No. 2, Gregg County, Texas
Cause No. 2023-429-CCL2

---

## Appellants' Brief

---

William R. Stukenberg
State Bar No. 24051397
wstukenberg@porterhedges.com
Lauren B. Harris
State Bar No. 02009470
lharris@porterhedges.com
Eugene M. Nettles
State Bar No. 14927300
emnettles@porterhedges.com
M. Harris Stamey
State Bar No. 24060650
hstamey@porterhedges.com
Mary Anna Rutledge
State Bar No.  24096149
mrutledge@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6611
Facsimile:  (713) 226-6211

*Oral Argument Requested*

1

## Identity of Parties and Counsel

The following is a complete list of the parties to this appeal and the names and addresses of counsel.

**Appellants:**

Mammoth Energy Services, Inc.
Higher Power Electrical, LLC
5 Sar Electric, LLC

**Appellant's Counsel:**

William R. Stukenberg
Lauren B. Harris
Eugene M. Nettles
M. Harris Stamey
Mary Anna Rutledge
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

**Appellees:**

Terrence Summers, Billy Cambron, Billy Franks, Luis Garcia, Daniel Lozoya, Salvador Miranda, Abel Miranda, Baltazar Oyervides, Joel Salazar, Saul Sanchez, Enrique Sanchez, Jr., Michael Springmeyer, Jorge Torres, Efrain Villastrigo, Kardeius McClendon, Michael Drabant, Damian Gray, Warren Houston, Brandon McNatt, William Nix, Steve Olivares, Kendall Smith, James Thompson, Michael Wallace, Casey Waymire and Jordan Rodriguez

**Appellees' Counsel:**

Douglas B. Welmaker
WELMAKER LAW, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601

## Table of Contents

**Page**

Identity of Parties and Counsel ................................................................ ii

Table of Contents ..................................................................................... iii

Table of Authorities ................................................................................. vi

References ............................................................................................... xiv

Statement of the Case...............................................................................xv

Statement Regarding Oral Argument .................................................... xvii

Issues Presented ................................................................................... xviii

Introduction..............................................................................................1

Statement of Facts ....................................................................................2

I.      Factual Background ........................................................................2

        A.     Appellants retain workers to restore power in Puerto Rico. ................2

        B.     Appellants consult legal counsel in developing their pay plan.............3

        C.     Appellants recognize a shortfall in wages during shorter workweeks, and address the issue through bonus payments. ...............5

        D.     Appellees assert claims under the FLSA, and the case proceeds to arbitration. ................................................................6

II.     Procedural History ........................................................................10

Standard and Scope of Review ...............................................................12

Summary of the Argument......................................................................13

Argument and Authorities.......................................................................16

I.      The Trial Court Erroneously Affirmed the Arbitration Award Because it Failed to Apply the TAA to this Dispute. ...................................16

A.   Appellees invoked the TAA in their own petition, and waived the right or are estopped to deny its application. ................................17

B.   The arbitration agreement applies Texas law, and Texas' substantive law includes the TAA.......................................................20

C.   The TAA permits agreements for expanded judicial review. .............23

D.   Appellants' legal insufficiency challenges are reviewable despite a limited arbitration record.......................................................26

II.   There is No Evidence and Insufficient Evidence that Appellants Recklessly or Willfully Violated the FLSA. ..................................................27

A.   The standard for "willfulness" requires deliberate and intentional conduct. ................................................................28

B.   The Arbitrator's finding that there was no willful violation during full workweeks precludes a determination of reckless disregard regarding deficiencies in the same plan. ............................30

C.   The Arbitrator's fact-findings do not demonstrate that Beagle, the Director of HR and decision maker, sought to willfully or recklessly violate the FLSA. ................................................................34

III.   There is No Evidence and Insufficient Evidence that Mammoth Energy Services was Appellees' Employer...................................................37

A.   The economic realities factors preclude the finding that Mammoth Energy Services was Appellees' employer. ......................38

B.   The Arbitrator made no findings of "operational control" necessary to establish the existence of an "employer" relationship. ...........................................................................41

IV.   The Award of Attorneys' Fees and Costs is Not Supported by Sufficient Evidence........................................................................42

A.   The Arbitrator exceeded his authority in failing to award attorneys' fees on a "per party" basis...................................................43

B.   The Arbitrator exceeded his authority in applying hourly rates outside of Puerto Rico. ........................................................47

C.     The Arbitrator's fee award is excessive. ..............................................53

     1.     The Arbitrator's 10% reduction in fees on a collective basis based on Appellees' moderate level of success is grossly inadequate. .....................................................54

     2.     Unsegregated and unreasonable billing entries required a further reduction in the requested fees. .....................................56

D.     The Arbitrator also exceeded his authority in awarding costs beyond those allowable under 28 U.S.C. §1920. ................................60

Conclusion .........................................................................................................62

Certificate of Service ........................................................................................64

Certificate of Compliance .................................................................................65

**Appendix**

Final Judgment ................................................................................... Tab A

October 30, 2023 Letter Ruling ..........................................................Tab B

Interim Award with Findings of Fact and Conclusions of Law .......................Tab C

Award for Attorneys' Fees and Costs................................................. Tab D

Arbitration Agreement (Excerpts) ....................................................Tab E

Plaintiff's First Amended Petition ................................................... Tab F

# Table of Authorities

**Page(s)**

## Cases

*ACLU of Ga. v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) .........................................................................49

*Aguayo v. Bassam Odeh, Inc.*,
  No. 3:13-CV-2951-B, 2016 WL 7178967 (N.D. Tex. Dec. 8, 2016) ...............57

*Allen v. Coil Tubing Serv., LLC*,
  846 F. Supp. 2d 678 (S.D. Tex. 2012) .............................................................32

*Barfield v. New York City Health & Hospitals Corp.*,
  537 F.3d 132 (2d. Cir. 2008) .....................................................................39, 56

*Baystate Alt. Staffing, Inc. v. Herman*,
  163 F.3d 668 (1st Cir. 1998) ............................................................................41

*Black v. SettlePou, P.C.*,
  732 F.3d 492 (5th Cir. 2013) ............................................................................54

*Brock v. Claridge Hotel and Casino*,
  711 F. Supp. 779 (1989) ...................................................................................35

*Calderon v. Witvoet*,
  112 F.3d 275 (7th Cir. 1997) ............................................................................62

*Calsep A/S v. Intelligent Petroleum Software Sols. LLC*,
  No. 4:19-CV-1118, 2022 WL 508334 (S.D. Tex. Feb. 18, 2022).....................57

*Castro v. Precision Demolition LLC*,
  No. 3:15-CV-0213-D, 2017 WL 6381742 (N.D. Tex. Dec. 14,
  2017) .................................................................................................................55

*Cavallaro v. UMass Mem'l Health Care, Inc.*,
  971 F. Supp. 2d 139 (D. Mass. 2013).............................................................40

*Centex/Vestal v. Friendship West Baptist Church*,
  314 S.W.3d 677 (Tex. App.—Dallas 2010, pet. denied)............................26, 27

vi

*Champion v. Phaselink Utility Solutions, LLC*,
No. SA-22-CV-00145-JKP, 2022 WL 3693461 (W.D. Tex. Aug.
24, 2022) ................................................................................................61

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ...................................................................39

*Combs v. City of Huntington, Texas*,
829 F.3d 388 (5th Cir. 2016) ..................................................................54

*Cox v. Brookshire Grocery Co.*,
919 F.2d 354 (5th Cir. 1990) ..................................................................27

*In re D. Wilson Constr. Co.*,
196 S.W.3d 774 (Tex. 2006) (orig. proceeding) .....................................23

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018) ..................................................................29

*Dalheim v. KDFW-TV*,
706 F. Supp. 493 (N.D. Tex. 1988) .........................................................28

*Diedra Gettridge v. Civil Center Site Dev. Co.*,
No. CIV.A. 01-2434, 2002 WL 126574 (E.D. La. Jan. 29, 2002) ....................34

*Ellis v. Schlimmer*,
337 S.W.3d 860 (Tex. 2011) (per curiam) ..............................................18

*In re Enterprise Rent-A-Car Wage and Hour Employment Practices
Litig.*,
683 F.3d 462 (3d Cir. 2012) ....................................................................41

*Ernst Young LLP v. Martin*,
278 S.W.3d 497 (Tex. App.—Houston [14th Dist.] 2009, no pet.) .................21

*Farrar v. Hobby*,
506 U.S. 103 (1992)..................................................................................56

*Fernandes v. Northline Enter.*,
No. H-21-482, 2022 WL 3229510 (S.D. Tex. July 25, 2022)...........................61

*Fralick v. Plumbers & Pipefitters Nat. Pension Fund*,
No. 3:09-CV-0752-D, 2011 WL 487754 (N.D. Tex. Feb. 11, 2011).................46

vii

*Furlow v. Bullzeye Oilfield Service, LLC*,
    No. 05:15-CV-1156-DAE, 2017 WL 11049242 (W.D. Tex. Aug.
    4, 2017) ................................................................................................29

*Gagnon v. United Technisource, Inc.*,
    607 F.3d 1036 (5th Cir. 2010) ..........................................46, 60, 61, 62

*Garmong v. Montgomery Cty.*,
    668 F. Supp. 1000 (S.D. Tex. 1987) ................................................49

*Gill v. Bullzeye Oilfield Services, LLC*,
    No. SA:15-CV-1166-DAE, 2018 WL 4677902 (W.D. Tex. July 19,
    2018) ..........................................................................................58, 59

*Godlewska v. Human Dev. Ass'n, Inc.*,
    916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd*, 561 F. App'x 108 (2d.
    Cir. 2014) ............................................................................................39

*Goldberg v. Whitaker House Co-op., Inc.*,
    366 U.S. 28 (1961) ..............................................................................38

*Gray v. Powers*,
    673 F.3d 352 (5th Cir. 2012) ..........................................38, 39, 40, 41

*Guckenberger v. Boston Univ.*,
    8 F.Supp.2d 91, 103 (D. Mass. 1998) ................................................48

*Halferty v. Pulse Drug Co., Inc.*,
    826 F.2d 2 (5th Cir. 1987) ..................................................................31

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................57

*Herold v. Hajoca Corp.*,
    864 F.2d 317 (4th Cir. 1988) ..............................................................62

*In re HMR Food Holding, LP*,
    602 B.R. 855 (Bankr. D. Del. 2019) ..................................................40

*Hoenninger v. Leasing Enterprises, Ltd.*,
    803 F. App'x 756 (5th Cir. 2020) ......................................................28

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*,
  579 F.3d 546 (5th Cir. 2009) ........................................................................28, 29

*Johnson v. Big Lots Stores*,
  604 F. Supp. 2d 903 (E.D. La. 2009)........................................................28, 32, 60

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) .......................................................................58

*La. Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) .......................................................................46

*Layton v. DHL Exp. (USA), Inc.*,
  686 F.3d 1172 (11th Cir. 2012) ..................................................................40

*Lusk v. Foxmeyer Health Corp.*,
  129 F.3d 773 (5th Cir. 1997) .....................................................................41

*Maceira v. Pagan*,
  698 F.2d 38 (1st Cir. 1983) .......................................................................48

*Maddock v. KB Homes, Inc.*,
  631 F. Supp. 2d 1226 (W.D. Cal. 2007) ....................................................41, 43

*McClain v. Lufkin Indus., Inc.*,
  649 F.3d 374 (5th Cir. 2011) .....................................................................47

*McCollum v. Red River Valley Pub. Co.*,
  352 S.W.2d 144 (Tex. Civ. App.—Amarillo 1961, writ ref'd n.r.e.)................26

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)................................................................................28, 29

*Meadows v. Latshaw Drilling Co., LLC*,
  No. 3:15-CV-1173-N, 2020 WL 291582 (N.D. Tex. Jan. 21, 2020) ................58

*Mid-Century Ins. Co. v. Ademaj*,
  243 S.W.3d 618 (Tex. 2007) .....................................................................20

*Moomjian v. T.D. Ameritrade, Inc.*,
  C.A. No. 3:15-CV-0952-L, 2016 WL 4368301 (N.D. Tex. Aug. 16,
  2016) ..................................................................................................12, 16

*Morgan Stanley DW, Inc. v. ESCAM Trust No. 280905*,
  No. 04-61628-CIV, 2006 WL 8432333 (S.D. Fla. Feb. 10, 2006) .............47, 51

*Multi-Housing Tax Credit Partners XXXI v. White Settlement Senior
  Living, LLC*,
  No. 05-22-00721-CV, 2024 WL 301916 (Tex. App.—Dallas Jan.
  26, 2024, pet. filed) (mem. op.) ....................................................................24, 25

*Nafta Traders, Inc. v. Quinn*,
  339 S.W.3d 84 (Tex. 2011)........................................... xvii, 2, 13, 14, 21, 23, 24

*Pineda v. JTCH Apartments, LLC*,
  126 F. Supp. 3d 797 (N.D. Tex. 2015) ..............................................................54

*Poole-Ward v. Affiliates for Women's Health, P.A.*,
  283 F. Supp. 3d 595 (S.D. Tex. 2017)....................................................13, 14, 17

*Produce Pay, Inc. v. Amore Produce, LLC*,
  No. 7:20-CV-00293, 2021 WL 5155715 (S.D. Tex. July 21, 2021) .................46

*R & P Enters. v. LaGuarta, Gavrel, & Kirk, Inc*.,
  596 S.W.2d 517 (Tex. 1980) ..............................................................................22

*Randolph v. PowerComm Constr., Inc.*,
  780 F. App'x 16 (4th Cir. 2019) (per curiam) ..............................................45, 55

*Rhode Island Med. Society v. Whitehouse*,
  323 F. Supp. 2d 283 (D. R.I. 2004) ..............................................................48, 51

*Riddle v. Tex-Fin, Inc.*,
  No. H-08-3121, 2011 WL 1103033 (S.D. Tex. Mar. 22, 2011).........................55

*In re Rubiola*,
  334 S.W.3d 220 (Tex. 2011) (orig. proceeding) ...............................................20

*Saizan v. Delta Concrete Products Co., Inc*,
  448 F.3d 795 (5th Cir. 2006) .............................................................................56

*Singer v. City of Waco, Tex*.,
  324 F.3d 813 (5th Cir. 2003) .............................................................................28

*Skytec, Inc. v. Logistic Sys., Inc.*,
  Civil No. 15-2104, 2019 WL 1271459 (D. P.R. Mar. 15, 2019).......................52

*Snyder v. Eanes Indep. Sch. Dist.*,
860 S.W.2d 692 (Tex. Civ. App.—Austin 1993, writ denied)...........................21

*Stanford v. Lincoln Tank Co.*,
421 S.W.2d 412 (Tex. Civ. App.—Fort Worth 1967, no writ) ........................26

*Steele v. Leasing Enter., Ltd.*,
826 F.3d 237 (5th Cir. 2016) .................................................15, 28, 29

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,
84 S.W.3d 212 (Tex. 2002)....................................................13, 24

*Sweeney v. Jefferson*,
212 S.W.3d 556 (Tex. App.—Austin 2006, no pet.).........................................26

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
566 U.S. 560 (2012)....................................................................61

*Texas Division-Tranter, Inc. v. Carrozza*,
876 S.W.2d 312 (Tex. 1994) .........................................................50

*Thomas Petroleum, Inc. v. Morris*,
355 S.W.3d 94 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ................18

*Tollett v. City of Kemah*,
285 F.3d 357 (5th Cir. 2002) ........................................................47

*Vieques Conserv. and Historical Trust, Inc. v. Martinez*,
313 F. Supp. 2d 40 (D. P. R. 2004) ............................................47, 48

*Villegas v. Dependable Const. Servs., Inc.*,
CIV. No. 4:07-CV-2165, 2008 WL 5137321 (S.D. Tex. Dec. 8,
2008) ..............................................................................29

*Vorwerk v. Williamson Cnty Grain, Inc.*,
No. 03-10-00549-CV, 2012 WL 593481 (Tex. App.—Austin Feb.
23, 2012, pet. denied) (memo. op.)....................................................18

*Wagenmann v. Pozzi*,
No. 79-1658-F, 1986 WL 11754 (D. Mass. Oct. 17, 1986) .............................52

*Watson v. Graves*,
909 F.2d 1549 (5th Cir. 1990) .......................................................38

*Wesley v. Yellow Transp., Inc.*,
 Nos. 3:05-CV-2266-D, 3:05-CV-2271-D, 2010 WL 4629972 (N.D.
 Tex. Nov. 8, 2010) (memo. op.) ..........................................................................56

*Wessely Energy Corp. v. Jennings*,
 736 S.W.2d 624 (Tex. 1987) ............................................................................21

*Williams v. Henagan*,
 595 F.3d 610 (5th Cir. 2010) ............................................................................38

*Zannikos v. Oil Inspectors (U.S.A.), Inc.*,
 605 F. App'x 349 (5th Cir. 2015) .....................................................................29

**Statutes**

9 U.S.C. §10 ..............................................................................................................12

9 U.S.C. §11 ..............................................................................................12, 14, 15

28 U.S.C. §1920 ..............................................................................................60, 61, 62

29 U.S.C. §207(a)(1) ......................................................................................xv, 7

29 U.S.C. §255(a) ..................................................................................xv, 1, 10, 15, 27

29 U.S.C. §§201-219 (Fair Labor Standards Act) .........................................1, xv, 6

9 U.S.C. §§1-16 (Federal Arbitration Act) ....................................12, 13, 16, 17, 21

TEX. CIV. PRAC. & REM. CODE §§ 171.001-171.098
 (Texas Arbitration Act) ....................................... xviii, 1, 10, 12, 13, 16

TEX. CIV. PRAC. & REM. CODE §171.087 ....................................................18, 19

TEX. CIV. PRAC. & REM. CODE §171.088(a)(3)(A) ...................................................10

TEX. CIV. PRAC. & REM. CODE §171.096(a)(2) .........................................18, 22

TEX. R. APP. P. 9.4(i)(1) ....................................................................................65

TEX. R. APP. P. 9.4(i)(2)(B) ..............................................................................65

TEX. R. APP. P. 9.4(e) ..........................................................................................65

**Other Authorities**

29 C.F.R. §778.112 ....................................................................................................8

**References**

The record on appeal consists of 42 volumes of the Clerk's Record, and 5 volumes of the Reporters' Record.

References to the Clerk's record will be to the volume of the record followed by the page number.   For example, page 8430 in Volume 41 is as referenced 41CR:8430.

References to the Reporter's Record will also be to the volume of the record followed by the page number.   Page 5 of Volume 3 of the Reporter's Record, for example, is referenced 3RR:5.

## Statement of the Case

***Nature of the Case*:**  This is a case arising out of an employment dispute. Terrence Summers and twenty-five other claimants (collectively "Appellees") separately initiated litigation against Mammoth Energy Services, Inc., Higher Power Electrical, LLC, and 5 Star Electric (collectively "Appellants") pursuant to the Fair Labor Standards Act ("FLSA") based on an alleged failure to pay them overtime compensation.  *See* 29 U.S.C. §207(a)(1).  The cases then proceeded in arbitration before a single arbitrator over a period of several weeks.  Because Appellees' claims were filed after the two-year limitations period, Appellees were only permitted a recovery if the arbitrator determined that Appellants willfully violated the FLSA.  *Id.* at 29 U.S.C. §255(a).  The Arbitrator ultimately determined that Appellants' actions were willful and awarded most Appellees back pay and liquidated damages, as well as attorneys' fees. 3CR:466-95, 4CR:713-23; App.Tabs C, D. Appellees then filed a motion to confirm the arbitration award.  1CR:261-67.  Appellants filed a motion to vacate the arbitration award.  3CR:420-7CR:1286.

***Trial Court*:**  County Court at Law 2 in Gregg County, Texas; the Honorable Vincent Dulweber presiding.

***Trial Court Disposition*:**  The trial court denied Appellants' motion to vacate the arbitration award and granted Appellees' request to confirm the award.  41CR:8430-8433; App.Tab A.  The court's judgment awards Appellees $112,558.76 in back pay and liquidated damages, $439,129.35 in attorneys' fees, and $33,6752.65 in costs and expenses.  41CR:8430-8504.  Appellants filed a Motion to Modify, Correct or Reform the Judgment, and Motion for New Trial. 42CR:8542-8680.  The motion was denied by operation of law.

***Parties in the Court***
***of Appeals:***

**Appellants:**
Mammoth Energy Services, Inc.
Higher Power Electrical, LLC
5 Star Electric, LLC

**Appellees:**
Terrence Summers
Billy Cambron
Billy Franks
Luis Garcia
Daniel Lozoya
Salvador Miranda
Abel Miranda
Baltazar Oyervides
Joel Salazar
Saul Sanchez
Enrique Sanchez, Jr.
Michael Springmeyer
Jorge Torres
Efrain Villastrigo
Kardeius McClendon
Michael Drabant
Damian Gray
Warren Houston
Brandon McNatt
William Nix
Steve Olivares
Kendall Smith
James Thompson
Michael Wallace
Casey Waymire
Jordan Rodriguez

## Statement Regarding Oral Argument

Appellants respectfully submit that the issues raised in this appeal are novel issues that would warrant oral argument.  The Texas Supreme Court in *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 (Tex. 2011) recognized that the Texas Arbitration Act ("TAA") permits parties to agree to an expanded judicial review of an arbitration award.  The parties in this case included such language in their arbitration agreement and expanded the scope and standards of review for any challenge to an arbitration award on appeal.  This case presents an important issue regarding whether parties defending the arbitration award can avoid the broader appellate review available under the Arbitration Agreement by disclaiming the application of the TAA although they invoked the TAA in their pleadings when seeking to confirm the arbitration award, and the parties' arbitration agreement applies Texas law.  The district court declined to apply the TAA, and limited review to only the grounds for vacating an arbitration award under the FAA, precluding any decision on the merits.   If the Court determines that its decisional process would be aided by oral argument, Appellants would welcome the opportunity to present their position.

## Issues Presented

1. Whether the trial court erred in declining to vacate the arbitration award against Appellants on the basis that the Arbitrator exceeded his authority, and in confirming the award to Appellees without reaching the merits based on its decision that the Texas Arbitration Act did not apply to this dispute?

2. Whether trial court erroneously declined to apply the Texas Arbitration Act and the contractual standard of review set forth in the parties' arbitration agreement in evaluating whether the arbitration award should be vacated?

3. Whether the trial court erred in denying Appellants' motion to vacate the arbitration award when the Arbitrator's legal conclusions are erroneous as a matter of law and there is insufficient evidence to support them?

4. Whether the trial court erred in denying Appellants' motion to vacate the attorneys' fee and cost award to Appellees because it was excessive and was not segregated among the individual claimants?

## Introduction

Appellees are electrical workers who sought to recover against their former employer, Mammoth, for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203, *et seq*. Appellees were hired on an expedited basis to assist in repairing electrical infrastructure in Puerto Rico following two devastating hurricanes. Because they would be required to work long hours, Mammoth developed a pay plan that would compensate them for 16-hours per day, including regular and overtime wages. Appellees filed suit complaining that the plan was an improper day-rate plan violative of the FLSA, but Appellees could not recover on their claims unless they proved that any violation was "willful" since they filed suit outside the two-year limitations period. *See* 29 U.S.C. §255(a). The case was submitted to arbitration, and the Arbitrator sided with Appellees, concluding that Appellants acted in "reckless disregard" of the FLSA even though their pay plan had been developed through reliance on outside employment counsel—a key fact that should have precluded the finding under established precedent.

Because the Arbitrator's own findings were legally erroneous, Appellants challenged the arbitration award in county court under the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE §§171.001-171.098. The parties' arbitration agreement includes a provision adopting a broader scope of review and directs the application of the same standard applied in an ordinary appeal following a bench

1

trial. The Texas Supreme Court has recognized that the TAA affords an expanded right of judicial review. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d at 101. However, the district court declined to recognize the application of the TAA in this case although Appellees themselves invoked the TAA in their own pleadings, and the arbitration agreement recognizes the application of the FAA and Texas substantive law. The district court's refusal to apply the TAA formed the basis of his decision declining to address the merits of Appellants' claims. The district court's decision refusing to recognize the application of the TAA and to address the merits of Appellants' claims should be reversed.

**Statement of Facts**

**I.    Factual Background**

    **A.    Appellants retain workers to restore power in Puerto Rico.**

In early September 2017, Hurricanes Irma and Maria devastated Puerto Rico and its power infrastructure. Cobra Acquisitions LLC ("Cobra"),[1] an electrical and power company providing maintenance and repair services to grid operators, entered into a Master Service Agreement with Puerto Rico Electrical Power Authority ("PREPA") in October 2017 to restore power. 3CR:471¶14. Cobra contracted with two of its subsidiaries, Higher Power Electrical, LLC ("Higher Power") and 5-Star

---

[1] The Arbitrator concluded that Cobra was not Appellees' employer. *See* 3CR:474¶24.

2

Electric, LLC ("5-Star"), to provide workers.[2]  3CR:471¶14.  Approximately fifteen Appellees were employed with 5-Star in various positions, while thirteen Appellees worked for Higher Power at various times between approximately November 2017 and July 2018.  3CR:468-69¶10.

Keith Ellison ("Ellison"), President of Cobra, developed a wage scale. Mammoth Energy, Inc. ("Mammoth") (which is not a party to the lawsuit) provided assistance in developing the actual pay plan.  Mammoth provided back-office support services to Cobra, 5-Star and HPE pursuant to a shared services agreement. 3CR:470¶13.  Mammoth Energy Services, Inc. ("Mammoth Energy Services"), an entity that Appellees sued, is a publicly traded entity.   3CR:470¶13.

### B.     Appellants consult legal counsel in developing their pay plan.

Jeff Beagle, Director of Human Resources, was employed with Mammoth. 3CR:470¶13.  Beagle was a human resources specialist with over a decade of experience in human resources matters, including wage and hour compliance. 3CR:546.  Beagle "functioned as the Director of Human Resources for numerous entities, including Mammoth Energy Services."  3CR:470¶13.  "Beagle, acting on behalf of Mammoth Energy Services, developed the schedules, conditions of

---

[2] Cobra later transferred its ownership interests to a different entity referred to as "Cobra Energy" for operations purposes.  3CR:471¶14.

3

employment, payroll practices, and timekeeping practices at issue in this case." 3CR:473-74¶23.

Beagle "communicated with Steve Broussard (outside legal counsel) regarding the work hours and compensation structure for [Appellees] on numerous occasions leading up to the implementation of the pay practices at issue." 3CR:473¶20.   Broussard, an attorney with Hall Estill, was a member of a 150-lawyer firm headquartered in Tulsa, Oklahoma, had been practicing for 25 years, and had considerable expertise with wage and hour matters.  3CR:554.  Beagle initially indicated that Appellants were interested in paying employees on a day rate basis, but was told that to do so, Appellants would need to pay overtime on top of the day rate.   3CR:492¶87; 3CR:555.   Broussard, Beagle, and Mark Layton ("Layton") then determined an hourly rate that would account for expected overtime and approximate, albeit not match, the targeted rates assuming an employee worked sixteen hours a day, seven days a week, for a total of 112 hours per week.  3CR:547. Accounting for forty hours of regular time and seventy-two hours of overtime, Beagle then established an hourly rate that would result in approximating the target rates.  3CR:547.

Beagle sent Broussard an email with the foregoing calculations and they later discussed the mechanics of the plan.  3CR:547.  Broussard understood that the purpose of the calculations was to adopt one of the pay plans discussed and comply

with the FLSA.  3CR:555-56.  Once counsel approved the pay plan as compliant, Beagle then disseminated that information to senior leadership as well as various administrative personnel for implementation.    3CR:548.    Further, Broussard reviewed and approved the offer letter to be disseminated to prospective employees. 3CR:553-54.

Appellees were paid in accordance with this pay plan.  Appellees generally worked around 12 hours per day, but their hours fluctuated generally from 10-14 hours per day.  3CR:485¶65.  Appellees always received a gross amount on par with the "per day" amount set forth in their offer letters (based on the assumption that they would work 16 hours a day) multiplied by the number of days worked, regardless of how many hours they actually worked."  3CR:482¶51.  Appellants' payroll personnel would enter 16 hours for every day if the employee worked seven days during the workweek.   3CR:483¶60.

### C.    Appellants recognize a shortfall in wages during shorter workweeks, and address the issue through bonus payments.

When the payroll practice was being implemented, Missy Davis ("Davis"), the 5-Star HR manager, noted that when employees did not work seven days in a workweek, there was a shortfall in Appellees' compensation under the approved plan.  Davis asked Beagle how to address the situation, and Beagle responded that Appellants could pay bonuses for the missed days. 3CR:550.  The pay plan had been developed on advice of counsel, and Beagle, who had years of HR experience, made

5

the decision to implement the payment of bonuses in those situations.  3CR:546, 3CR:549-5.

Accordingly, "[Appellants] regularly issued the Gross-Up payments when [Appellees] worked fewer than seven days in a workweek." 3CR:482¶53.  Further, Davis and another payroll employee "regularly tracked this information and manually entered "Gross-Up payments to ensure that employees received their 'per day' compensation."  3CR:482¶53.  The "Gross-Up Payments were based on a formula designed to ensure [Appellees] received their 'per day' amount for each day worked."  3CR:482-83¶55, citing Ex. 90 ("email from Beagle explaining that the wages will be 'grossed up' if they 'do not equal out to the day rate.").  "[Appellees] and [Appellants] also had an understanding that [Appellees] would receive a 'per day' amount—as set forth in the offer letters—and the Gross-Up Payments were necessary to ensure that [Appellees] in fact received their 'per day' amount." 3CR:483¶56.

### D.    Appellees assert claims under the FLSA, and the case proceeds to arbitration.

Appellees later brought claims against Appellants for alleged violations of the Fair Labor Standards Act ("FLSA").[3]  3CR:468¶9.  Appellees claimed that they were allegedly paid a day-rate instead of on an hourly plus overtime basis and were not

---

[3] The Arbitrator did not award Dennis Conners, Anthony Eaton, or Aaron Smith any recovery, so they did not join in seeking confirmation of the award.

paid overtime wages. *See* 29 U.S.C. §207(a)(1). Appellants denied that they violated the FLSA, asserted that Appellees were properly paid on an hourly with overtime basis, and that they operated in good faith in implementing the pay practices, precluding [Appellees'] recovery of liquidated damages.

Pursuant to each Appellees' Arbitration Agreement, *see* App.Tab.E, individual arbitration hearings took place in San Juan, Puerto Rico on three separate occasions in March, May, and November 2022. On March 8, 2023, the Arbitrator issued an Interim Arbitration Award with Findings of Fact and Conclusions of Law (the "Interim Award"). 3CR:466-495; App.Tab.C. Among other things, the Arbitrator determined that Mammoth Energy Services was Appellees' employer. 3CR:474¶24. The Arbitrator also decided that Appellees were paid on a day-rate basis, and were not paid overtime. 3CR:477¶36, 3CR:487¶71. The Arbitrator then rejected Appellants' position that payments made when an employee did not work a full workweek in the form of "gross-up" payments were discretionary bonuses that would be excluded from the regular rate. 3CR:481-82¶52-53.

Because Appellees' claims accrued entirely within the third year before the lawsuit was commenced, Appellees were required to prove that Appellants willfully violated the FLSA. 3CR:491¶83. To meet this burden, Appellees had to show that Appellants either (1) knew the pay practice resulted in FLSA violations; or (2) showed "reckless disregard" for whether the pay practice resulted in FLSA

violations.    3CR:491¶83.    The Arbitrator issued the following findings and conclusions as guiding his decision relating to willful conduct:

> 84.  The Arbitrator concludes that [Appellants'] pay practices were not willful violations of the FLSA during workweeks in which Claimants worked seven days.  During those workweeks, [Appellants] should have paid overtime pay in accordance with 29 C.F.R. §778.112.  But Claimants cannot collect damages for those workweeks because the Claims accrued entirely within the third year preceding this action.

> 85.  The Arbitrator concludes, however, that [Appellants] showed reckless disregard for whether its pay practices complied with the FLSA during workweeks in which Claimants were issued Gross-Up Payments.  For those workweeks, Claimants are owed overtime pay calculated using the following formula:  total compensation for the workweek/ total hours worked during the workweek *0.5* total overtime hours worked during the workweek.

> 86.   The Arbitrator reaches this conclusion because the Gross-Up Payments were regularly paid to ensure that Claimants received their promised "per day" amount for each day worked during the workweek. [Appellants] did not consult with their legal counsel, Broussard, regarding the legal implication of making the Gross-Up Payments. Layton's hearing testimony and Broussard's deposition testimony confirms this fact.  The failure to consult with legal counsel regarding the aspect of a payment plan is not, standing alone, enough to establish a willful violation of the FLSA.

> 87.  In this case, however, Broussard had already advised [Appellants] that employees paid on a day-rate basis are entitled to additional overtime pay for an hours that they work over 40 in a workweek.  *By paying the Gross-Up Payments (to ensure workers received their "per day" amounts),* [Appellants] *showed reckless disregard for whether they were in compliance with the FLSA during those workweeks*.

3CR:491-92¶84-87; App.Tab.C.  The Arbitrator awarded Appellees Billy Cambron,

Billy Franks, Luis Garcia, Daniel Lozoya, Salvador Miranda, Abel Miranda,

Baltazar Oyervides, Joel Salazar, Saul Sanchez, Enrique Sanchez, Jr., Michael Springmeyer, Jorge Torres, Efrain Villastrigo, and Kardeius McClendon cumulatively $32,679.79 in back pay and $32,679.79 as liquidated damages against 5-Star and Mammoth Energy Services, jointly and severally.  3CR:493-94¶92.  The Arbitrator also awarded Appellees Michael Drabant, Damian Gray, Warren Houston, Brandon McNatt, William Nix, Steve Olivares, Kendall Smith, Terrence Summers, James Thompson, Michael Wallace, and Casey Waymire cumulatively $22,799.59 in back pay and $22,799.59 as liquidated damages against HPE and Mammoth Energy Services, jointly and severally.  3CR:494¶93.  Jordan Rodriguez recovered $800.00 in back pay and $800.00 in liquidated damages from Mammoth Energy Services.  3CR:495¶94.

Appellees then filed a Motion for Attorneys' Fees and Costs, 4CR:755-7CR:1388, and Appellants opposed the motion.  7CR:1390-1438. The Arbitrator subsequently issued an Award for Attorneys' Fees and Costs to dispose of all remaining issues and create a Final Arbitration Award (collectively, "Final Award"). 4CR:723¶¶33-34; App.Tab.D.  The Arbitrator awarded Appellees $439,129.35 in attorneys' fees and $33,652.65 for costs and expenses.  4CR:713-23.  The fees were allocated among Appellants as follows:  $254,989.57 in fees and $19,541.11 in costs against 5-Star and Mammoth Energy Services; $177,897.64 in fees and $13,633.17

in costs against HPE and Mammoth Energy Services; and an additional $6,242.13 in fees and $478.37 in costs against Mammoth Energy Services.  4CR:722-23¶30.

## II.    Procedural History

Appellees filed a motion to confirm the award in Texas state County court based on the Texas Arbitration Act ("TAA").  1CR:261-67.  Appellants filed a motion to vacate the Final Arbitration Award arguing that the Arbitrator exceeded his authority because the arbitration agreement effectively limited his authority to that of a judge because it provided that any challenge to the award would "apply the same legal standard that would be used" in an appeal of a "judgment rendered following a bench trial sitting without a jury."   3CR:542; 3CR:420-7CR:1286. Appellants relied on the expanded judicial review authorized under the TAA and the parties' arbitration agreement as the legal template for their complaints. 3CR:420-7CR:1286; *see* TEX. CIV. PRAC. & REM. CODE §171.088(a)(3)(A).

Appellants raised three primary complaints related to the legal sufficiency of the evidence and facial errors in the Arbitrator's findings. *Id*. §171.088(a)(3)(A). First, Appellants argued that Appellees failed to carry their burden as a matter of law to prove that Appellants acted with reckless disregard regarding their compliance with the FLSA—a prerequisite to their obtaining any recovery.  *See* 29 U.S.C. §255(a); 3CR:491-92¶84-87. Second, Appellants challenged the Arbitrator's decision that Mammoth Energy Services was Appellees' "employer," when

10

28

Appellees worked for either Higher Power or 5 Star Electric, LLC.  3CR:474¶24. Third, Appellants challenged the Arbitrator's Award for Attorneys' Fees and Costs because: (1) the fees awarded were not properly segregated on a per party basis as the Arbitration Agreement requires; (2) the Arbitrator applied Texas attorneys' fee rates to a Puerto Rico arbitration; and (3) the award was excessive and improperly includes fees and costs for Appellees who dropped their claims, did not appear at their arbitration hearings, or did not prevail.

A hearing was set on the motions for October 12, 2024.  Appellees responded to Appellants' motion to vacate the award shortly before the hearing, and argued that expanded judicial review was not available because only the FAA governed the parties' dispute.  41CR:8630-80.  Appellees also filed a supplemental response on the day of the hearing to point out that the Arbitration Award referenced the application of the FAA.  41CR:8386-89.  The court considered the parties' respective positions, and agreed to accept supplemental briefing.  4RR:1-40.  Appellants also filed a reply brief responding to the issues Appellees raised.  41CR:8391-8410.

The district court issued a letter ruling, and then a subsequent corrected ruling on October 30, 2023 in which it denied Appellants' motion to vacate the arbitration award.  41CR:8416-17, 8422-23; App.Tab.B.  The court did not address the merits of Appellants' claims.  Instead, the court determined that the TAA did not apply to this dispute, and therefore, there was no expanded judicial review available contrary

to the terms of the parties' arbitration agreement.  *Id*.  The court determined that the FAA controlled, and only those grounds set out in 9 U.S.C. §§10 and 11 for vacating the award applied, precluding the court from considering Appellants' legal sufficiency challenges.  *Id.*

The court issued a final judgment on November 28, 2023.[4]  41CR:8430-33. The judgment awards Appellees $112,558.76 in back pay and liquidated damages. The judgment further awards Appellees $439,129.35 in attorneys' fees and $33,6752.65 in costs and expenses.  *Id.*  Appellants timely filed a motion for new trial that was denied by operation of law.  42CR:8542-8680.

## Standard and Scope of Review

The standard and scope of review of the arbitration award are contained within the parties' Arbitration Agreement.   The Agreement provides that arbitrations conducted pursuant to the Agreement shall be governed by the Federal Arbitration Act ("FAA"), and that the Agreement is also to be construed under Texas law. 3CR:542.   Under Texas Law, the applicable statute governing arbitrations is the Texas Arbitration Act (the "TAA").  *See* TEX. CIV. PRAC. & REM. CODE §§ 171.001-171.098.   Therefore, as more fully discussed below, both the FAA and the TAA apply here, and the statutes apply concurrently.  *See, e.g., Moomjian v. T.D.*

---

[4] The judgment is titled "*Petitioners' Revised Proposed* Final Judgment," but purports to be a final judgment.

*Ameritrade, Inc.,* C.A. No. 3:15-CV-0952-L, 2016 WL 4368301, at *3 (N.D. Tex. Aug. 16, 2016) (applying FAA and TAA concurrently); *Poole-Ward v. Affiliates for Women's Health, P.A.*, 283 F. Supp. 3d 595, 598 (S.D. Tex. 2017) ("When a contract contains a clause specifying Texas law (as here), but does not exclude the applicability of the Federal Arbitration Act, both the Federal and Texas Arbitration Acts apply.").

The Texas Supreme Court has held that the TAA permits parties to agree to expanded judicial review of arbitration awards. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d at 101. The Court has also recognized that "the FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA." *See id.* at 101. The parties' contract here includes such language. According to the contract, the standard for review of the arbitration award is the same as in an ordinary appeal from a trial court's judgment following a bench trial. 3CR:542. The Arbitrator's legal conclusions are reviewed *de novo*, and the reviewing court exercises its own judgment and redetermines each legal issue. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002).

### Summary of the Argument

The county court erroneously affirmed the arbitration award because it failed to properly recognize the application of the Texas Arbitration Act in the first

instance.  41CR:8416-17.  The parties' arbitration agreement plainly states that Texas law—which necessarily includes the TAA—applies here.  3CR:542.  Texas law supports a reading of the arbitration agreement in which the TAA and FAA are to be applied concurrently.  *See Poole-Ward*, 283 F. Supp. 3d at 598.  The court's refusal to apply the TAA here violates cardinal rules of contract and statutory construction.  Further, Appellees' own reliance on the TAA in their pleadings also waived their right to deny the application of the TAA, or at least, they are estopped to deny its application. Appellees should not be permitted to invoke the TAA for the purpose of confirming their award, and yet deny its application for purposes of the scope of review.

Because the lower court wrongly refused to apply the TAA, the court did not reach the merits of this dispute.  The court found that only those grounds in the FAA for vacating an arbitration award applied, 9 U.S.C. §§10, 11, and those grounds did not provide a basis for vacating the award.  41CR:8416-17.  Since the TAA permits parties to agree to expanded judicial review of arbitration awards, the court's recognition of the TAA's application would have allowed it to review the arbitration award as in an ordinary appeal from a final judgment—the standard incorporated into the parties' arbitration agreement.  *See* 3CR:541-42; *Nafta Traders*, 339 S.W.3d at 101.  Importantly, the district court's application of the TAA would have permitted it to consider the merits of Appellants' challenges to the Arbitrator's

14

finding of a willful violation of the FLSA.  *See* 29 U.S.C. §255(a); 3CR:491-92¶84-87.

Had the proper standards and scope of review been applied, the Arbitrator's conclusion that Appellants' actions constituted willful conduct or reckless disregard of the FLSA should have been vacated as legally erroneous under controlling precedent.  *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).  Similarly, the Arbitrator's erroneous findings that Mammoth Energy Services—a public entity with no employees—was Appellees' employer should have been vacated.  3CR:470¶13.

The lower court's decision that there was no basis under the FAA or TAA for vacating the arbitrator's attorneys' fee award is also in error.  41CR:8416-17.  Appellants raised the complaint that the Arbitrator exceeded his authority in failing to render a fee award in accordance with the arbitration agreement's requirement that damages be awarded "to each party."  3CR:542; 9 U.S.C. §§10, 11.  Instead, the Arbitrator awarded fees on a collective basis, and even improperly included in that amount an award of fees and costs for Claimants who dropped their claims, did not appear at their arbitration hearings, or did not prevail.  4CR:713-23.  Further, the county court erroneously failed to address that the Arbitrator applied Texas attorneys' fee rates to a Puerto Rico arbitration in calculating fees and awarded an

excessive amount of fees although Appellees recovered only modest damages.  For all these reasons, the trial court's decision should be reversed.

<b>Argument and Authorities</b>

**I.**    **The Trial Court Erroneously Affirmed the Arbitration Award Because it Failed to Apply the TAA to this Dispute.**

The trial court incorrectly determined that the TAA has no application here and that only the FAA governs this dispute.  41CR:8416-17.  The standards for reviewing the arbitration award are contained within the parties' Arbitration Agreement. 3CR:541-42. The court's failure to apply the TAA and to consider Appellants' legal insufficiency challenges requires reversal.

The parties' Arbitration Agreement provides that arbitrations conducted pursuant to the Agreement shall be governed by the Federal Arbitration Act ("FAA"), and that the Agreement is also to be construed under Texas law.  3CR:541-52. Under Texas law, the applicable statute governing arbitrations is the Texas Arbitration Act (the "TAA").  *See* TEX. CIV. PRAC. & REM. CODE §§ 171.001-171.098.  Therefore, both the FAA and the TAA apply here concurrently.  *See, e.g., Moomjian v. T.D. Ameritrade, Inc.,* 2016 WL 4368301, at *3 (applying FAA and TAA concurrently).

The parties' Arbitration Agreement expressly incorporates Texas law and addresses the controlling standard of review for any challenge to an arbitration award.  The Agreement provides:

16

34

Section IV.  **DISPUTE RESOLUTION**

Arbitration required by this policy shall be governed by the Federal Arbitration Act and conducted pursuant to the American Arbitration Association's Rules of Resolution of Employment Disputes (hereafter "Rules") then in effect that are not inconsistent with this Section IV…

Any appeal of or motion to vacate all or part of the arbitrator's award shall apply the same legal standard that would be used if the party moving to vacate or appeal the award were appealing a trial court judgment rendered following a bench trial sitting without a jury….This Section IV and its Acknowledgement of Employee Handbook Receipt and Agreement *shall be construed under the laws of the state of Texas and the United States Code*.

3CR:541-42 (emphasis added).   The contract itself plainly invokes both Texas law and the United States Code.  Because the parties' Agreement invokes both the FAA and Texas law, the trial court should have applied both statutes in reviewing the arbitration award.  *See, e.g., Poole-Ward,* 283 F. Supp. 3d at 598 ("When a contract contains a clause specifying Texas law but does not exclude the applicability of the Federal Arbitration Act, both the Federal and Texas Arbitration Acts apply.").

**A.     Appellees invoked the TAA in their own petition, and waived the right or are estopped to deny its application.**

Appellees themselves invoked the application of the TAA in their First Amended Petition filed in the trial court.  Appellees cannot subsequently retreat from their own pleadings that they never sought to amend.  Notably, Appellees' initial lawsuit was filed in federal court, and the parties ultimately agreed to dismiss the pending action in favor of arbitration.   8CR:1477-82.   Following arbitration, Appellees then relied on the TAA to file their petition in state county court, claiming

17

that venue is proper in this court based on Section 171.096(a)(2) of the TAA. 1CR:261-67¶11, citing TEX. CIV. PRAC. & REM. CODE §171.096(a)(2); App.Tab.F. Moreover, Appellees acknowledged the applicability of both the FAA and the TAA in their Petition as well when discussing the grounds for modifying, correcting, or vacating the awards, expressly citing both statutes. 1CR:261-67¶11, citing TEX. CIV. PRAC. & REM. CODE §171.087. Appellees' attempts to back-pedal from their *own pleading* is disingenuous as they expressly sought to confirm the arbitration award under the TAA.

The trial court rejected Appellants' arguments that Appellees' reliance on the TAA in its petition constituted a judicial admission, and also concluded that judicial estoppel did not require application of the TAA. 41CR:8416-23. While Appellants disagree, Appellees' reliance on the TAA in their petition has at least waived their claim that the TAA does not apply. Texas courts have rejected similar attempts by litigants to retreat from prior pleadings relying on the TAA or FAA. *See e.g. Thomas Petroleum, Inc. v. Morris,* 355 S.W.3d 94, 97 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (employer waived objection to application of the FAA by expressly invoking statute in pleading); *also see Vorwerk v. Williamson Cnty Grain, Inc*., No. 03-10-00549-CV, 2012 WL 593481, at *3-4 (Tex. App.—Austin Feb. 23, 2012, pet. denied) (memo. op.) (applying TAA despite argument that FAA should be applied where party moving to confirm arbitration award invoked the TAA); *Ellis v.*

*Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam) (finding that court of appeals had jurisdiction over interlocutory appeal when TAA was invoked by counsel at hearing).  Appellees' efforts to invoke the TAA for one purpose while avoiding it for all others should not be countenanced.

Appellees argued in supplemental briefing that Appellants are somehow precluded from arguing that the TAA applies when the Arbitrator made an express finding that the FAA applied, and Appellants did not challenge the finding. 41CR:8386-89.  Appellants did not challenge the finding because they do not dispute it.  And simply because the FAA applies does not mean that the TAA does not also apply.  The Arbitrator made no determination that the TAA does *not* apply, so no such challenge to the Arbitrator's finding was necessary or warranted.  To the extent that Appellees affirmatively seek relief under the TAA in state court, they have waived their right to claim (or are estopped to deny) that it does not apply.

Appellees' petition expressly relies on §171.087 of the TAA in seeking confirmation of the arbitration award, and that statute in turn references §171.088 listing the grounds for vacating arbitration awards.  *See* TEX. CIV. PRAC. & REM. CODE §171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award.").  A cardinal rule of statutory interpretation provides that when interpreting a statute, courts should begin with plain language derived from

the *entire act* and not just isolated portions so as to give effect to every part. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). By allowing Appellees to fix venue and jurisdiction of this court under the TAA (and even confirming the award through the same statutory vehicle) but ignoring other applicable provisions relating to Appellants' request to vacate the award, the court disavowed controlling supreme court precedent.

Appellees have expressly relied on the TAA in their own pleadings to fix venue in this court, and also relied on it to confirm the award. Accordingly, they cannot now assert that Appellants are not entitled to expanded judicial review recognized as permissible under the TAA when they rely on it for other purposes. The TAA also governs this dispute as even Appellees have interpreted the agreement to apply here and embraced it. Appellants' attempts to deny the TAA's application in the face of their own pleadings should have been rejected.

**B.    The arbitration agreement applies Texas law, and Texas' substantive law includes the TAA.**

The trial court erred in its finding that the arbitration agreement's reference to the application of Texas law does not invoke the TAA. 41CR:8416-23. Appellees argued that the reference to the applicability of Texas law is merely a general choice of law provision. 41CR:8360-80. However, the cases they rely on simply recognize the general proposition that the FAA applies when the parties reference it in their Arbitration Agreements. *See e.g. In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011)

(orig. proceeding). Appellees' cases do not hold or even address whether the TAA applies when an arbitration agreement states that Texas law applies in addition to the FAA.

Appellants do not dispute that the law provides that the parties' agreement expressing a decision to be bound by the FAA is a binding contract that must be honored. *See Ernst Young LLP v. Martin*, 278 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (the parties agreed the FAA applied to arbitration agreement stating it "shall be governed by the Federal Arbitration Act," and involving no argument or analysis as to application of the TAA). The trial court, however, disregarded that the parties can elect for *both* the TAA and FAA to apply.

Texas law provides that in interpreting the language of a contract, it is conclusively presumed that the parties to a contract know the law and have contracted with reference to it. *See Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex. 1987); *Snyder v. Eanes Indep. Sch. Dist*., 860 S.W.2d 692, 697 (Tex. Civ. App.—Austin 1993, writ denied). In 2011, approximately six years before the arbitration agreements at issue in this case were signed, the Texas Supreme Court issued its decision in *Nafta Traders, Inc. v. Quinn* where it recognized that "the FAA does not preempt the enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA." *See Nafta Traders, Inc.,* 339 S.W.3d at 101. Accordingly, the parties to the arbitration agreement here included

language allowing for expanded judicial review and incorporating the application of Texas law. The trial court's interpretation of the agreement to preclude application of the TAA ignores this cardinal principle of contract construction that illustrates the parties' intent.

The trial court's decision declining to recognize the application of the TAA here is also contrary to another key tenet of contract construction. The parties specifically included a provision in their agreement allowing for expanded judicial review and for the application of Texas law. A decision that the TAA does not apply here would effectively render the provision allowing expanded review a nullity and without any effect. Texas law is clear that courts should favor an interpretation of a contract that gives effect to *all* provisions so that none are rendered meaningless. *See R & P Enters. v. LaGuarta, Gavrel, & Kirk, Inc.*, 596 S.W.2d 517, 518-19 (Tex. 1980). Simply put, there is no basis for the parties to have included the express provision allowing for expanded judicial review if the TAA (part of Texas law) did not apply here. Both the TAA and FAA apply here, and even Appellees acknowledged the application of the TAA in seeking to confirm the arbitration award in Texas state county court. 1CR:261-67¶11, citing TEX. CIV. PRAC. & REM. CODE §171.096(a)(2).

### C.    The TAA permits agreements for expanded judicial review.

The trial court erroneously declined to consider the grounds Appellants asserted for vacating an arbitration award under the TAA.  As addressed above, the Texas Supreme Court has held that the TAA permits parties to agree to expanded judicial review of arbitration awards.  *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d at 101.  The Court has also recognized that "the FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA."[5]  *See id.* at 101.  The parties' contract here includes such language.

According to the contract, the standard to be applied is the same as in an ordinary appeal from a trial court's judgment following a bench trial.  3CR:541-42.  The contract provides:

> The arbitrator shall issue a reasoned award that: applies the facts to the law of the case; fully sets forth findings of facts and evidence presented; fully sets forth conclusions of law based upon the parties' respective legal theories; indicates which legal theories were followed, which were not, and why; if damages are awarded, specifies the arbitrator's calculations of the types of damages awarded to each party not later than ninety (90) days following the close of arbitration.  Any appeal of or motion to vacate all or part of the arbitrator's award shall apply the same legal standard that would be used if the party moving to vacate or appeal the award were appealing a trial court judgment rendered following a bench trial sitting without a jury.

---

[5] When both the FAA and the TAA are applicable—as they are here—the FAA will preempt the TAA only "to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Nafta Traders, Inc.,* 339 S.W.3d at 98 (internal citations omitted); *see also In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 778–79 (Tex. 2006) (orig. proceeding).

23

3CR:542-43.     The contract's language effectively limits the authority of the arbitrator to that of a judge whose decisions are reviewable as in any ordinary appeal. Accordingly, the trial court wrongly failed to review the Final Award in the manner instructed by the parties' contract. The Arbitrator's legal conclusions are reviewed *de novo*, and the reviewing court exercises its own judgment and redetermines each legal issue.  *See Subaru of Am.*, 84 S.W.3d at 222.

The Dallas court of appeals recently decided a case under similar facts.  In *Multi-Housing Tax Credit Partners XXXI v. White Settlement Senior Living, LLC*, No. 05-22-00721-CV, 2024 WL 301916 (Tex. App.—Dallas Jan. 26, 2024, pet. filed) (mem. op.), the court addressed the scope of review on appeal based on the language of an arbitration agreement that one party claimed permitted expanded review.  As in this case, both the TAA and FAA applied to the Agreement.  *Id.* at *2.  The court recognized that "parties proceeding under the TAA may in fact agree to expand the scope of judicial review by constraining the arbitrator's authority to commit errors of law of a type that would be remedial in an ordinary appeal."  *Id.* at *3, citing *Nafta Traders*, 339 S.W.3d at 87, 97 & 101.  The language at issue provided:

> Notwithstanding the applicable provisions of Texas law the parties agree that the decision of the arbitrator and the findings of fact and conclusions of law shall be reviewable on appeal upon the same grounds and standards of review as if said decision and supporting findings of fact and conclusions of law were entered by a court with subject matter and present jurisdiction.

*Id.* *3.

The court of appeals determined that this language constituted a clear agreement to limit the arbitrator's authority and power to that of a judge, whose decisions are "reviewable on appeal," and to expand the scope of judicial review. *Id.* at *4.   The court also found that other language providing that the arbitrator "shall endeavor to decide the controversy as though the arbitrator were a judge in a Texas court of law" also restricted his authority.  *Id.*  The court determined that by seeking to vacate the award on the basis that the arbitrator exceeded his authority, the appellant preserved its complaint that the arbitrator exceeded his powers by making rulings outside the powers of a judge.  *Id.*   The court then proceeded to review the appellants' complaints on legal insufficiency grounds.  *Id.* at *5.

The decision in the *Multi-Housing* case is directly on point.  The similar language in the arbitration agreement in this case stating that any appeal or motion to vacate an arbitration award "shall apply the same legal standard that would be used if the party moving to vacate or appeal the award were appealing a trial court judgment rendered following a bench trial sitting without a jury" compels the same result.

**D.      Appellants' legal insufficiency challenges are reviewable despite a limited arbitration record.**

The unavailability of a transcript of any live arbitration testimony does not preclude Appellants' challenges to the Arbitration Award.  Appellants do not dispute that the factual basis for the Arbitrator's decision is conclusive without a transcript of live testimony.[6]  However, Appellants are not precluded from challenging the legal sufficiency of the Arbitrator's findings as applied to controlling law.[7]  *See Sweeney v. Jefferson*, 212 S.W.3d 556, 561 n.7 (Tex. App.—Austin 2006, no pet.).  Appellate courts may still consider questions of law if there is no reporter's record, as well as evaluate errors in findings of fact and conclusions of law.  *See e.g. Stanford v. Lincoln Tank Co.*, 421 S.W.2d 412, 413 (Tex. Civ. App.—Fort Worth 1967, no writ); *McCollum v. Red River Valley Pub. Co.*, 352 S.W.2d 144, 146 (Tex. Civ. App.— Amarillo 1961, writ ref'd n.r.e.).

---

[6]  Texas law recognizes that a trial court may still consider the portions of the arbitration record brought forward that are directly relevant to the issues on appeal although the court must presume that the missing portions of the record support the trial court's factual findings.  *See Centex/Vestal v. Friendship West Baptist Church*, 314 S.W.3d 677, 684-85 (Tex. App.—Dallas 2010, pet. denied) (recognizing that although "the general rule is that without an arbitration transcript, we must presume the arbitration evidence adequately supported the award," the "rule merely limits rather than entirely forecloses" judicial review).

[7]  Appellants have provided a record with 28 volumes including all pleadings, motions, briefing, exhibits, and deposition testimony presented to the Arbitrator.  Evidence regarding attorneys' fees was presented by written motions.  The only witnesses to testify live were Appellees and Appellants' witnesses, Mark Layton and Scott Whitsell, who testified only at the first hearing session.  Broussard's testimony was offered by deposition and appears in the record. 4CR:749-50¶86.

In addition, the attorneys' fee and costs issues were decided on written submission, and that briefing and evidence have been brought forward for this court's consideration.  *See Centex/Vestal*, 314 S.W.3d at 684-85 (considering pleadings, motions and the contract to decide whether arbitrator exceeded his authority).  Therefore, any reporter's record is irrelevant to the attorneys' fee issue. Accordingly, this Court is not precluded from considering Appellants' challenges relating to the merits as developed more fully below.

## II.    There is No Evidence and Insufficient Evidence that Appellants Recklessly or Willfully Violated the FLSA.

The statute of limitations governing recovery of unpaid wages under the FLSA is two years unless the violation is willful.  29 U.S.C. §255(a).  A cause of action arising out of a willful violation may be commenced within three years.  *Id.* It is undisputed that Appellees commenced this action more than two years after their employment ended.  Therefore, Appellees bore the burden at the arbitration to prove that Appellants' violation was willful in order to obtain any recovery.  *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).  The Arbitrator's decision that Appellants "willfully" violated the FLSA is not supported by sufficient evidence as it is undisputed that their pay plan was created with the advice and assistance of outside legal counsel.  3CR:466-495¶84.  For the reasons below, the judgment must be reversed because even assuming that the Arbitrator's factual findings are supported by the evidence, the Arbitrator's legal conclusion that such

27

evidence demonstrates willfulness is not supported by legally sufficient evidence.

### A.   The standard for "willfulness" requires deliberate and intentional conduct.

The United States Supreme Court has recognized that to establish a willful violation of the FLSA, the claimant "must show that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988); *Steele,* 826 F.3d at 248. "Willful" conduct refers to conduct that is "voluntary, deliberate, and intentional, and not merely negligent." *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 511 (N.D. Tex. 1988), *aff'd*, 918 F.2d 1220 (5th Cir. 1990). Likewise, a good faith but incorrect assumption that a pay plan complied with the FLSA is not "willful." *Johnson v. Big Lots Stores*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009). Employers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ*., 579 F.3d 546, 553 & n.24 (5th Cir. 2009); *see e.g. Singer v. City of Waco, Tex*., 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding finding of willfulness where employer admitted that it knew its employees were being paid incorrectly, and the employer's attorney advised them not to investigate).

In determining whether an employer acted willfully, "[m]ere negligence does not suffice." *Hoenninger v. Leasing Enterprises, Ltd*., 803 F. App'x 756, 760 (5th Cir. 2020). An employer who "act[s] without a reasonable basis for believing that

28

46

it was complying with the [FLSA]" is merely negligent. *McLaughlin*, 486 U.S. at 134-35; *Steele*, 826 F.3d at 248. Likewise, an employer who fails to seek legal advice regarding its payment practices is also negligent. *Id.*; *see Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (finding allegations that employer knew of FLSA and failed to consult with attorneys or the DOL was insufficient to prove willfulness); *Ikossi-Anastasiou*, 579 F.3d at 553 (finding no evidence of willful conduct in absence of evidence employer actually knew that pay structure violated the FLSA or that it ignored or failed to investigate complaints); *Dacar v. Saybolt, L.P.,* 914 F.3d 917, 926 (5th Cir. 2018) (affirming determination that employer did not act willfully where it sought advice of counsel, was advised the law was unsettled, and employer's position was later rejected).

Evidence of willfulness includes "admissions from management that they knew they were violating the FLSA prior to the lawsuit" and "continu[ing] a practice without further investigation after [the employer] was informed by the Wage and Hour office that its payment method violated FLSA." *Villegas v. Dependable Const. Servs., Inc.*, CIV. No. 4:07-CV-2165, 2008 WL 5137321, at *26 (S.D. Tex. Dec. 8, 2008). A "failure to investigate or conduct research into the correct method for paying [] employees" does not constitute sufficient evidence of a willful violation. *See Furlow v. Bullzeye Oilfield Service, LLC*, No. 05:15-CV-1156-DAE, 2017 WL 11049242, at *6 (W.D. Tex. Aug. 4, 2017). As addressed below, the Arbitrator

failed to apply these controlling legal standards to his own fact-findings, and the trial court's judgment confirming the Arbitration award must be reversed.

**B.    The Arbitrator's finding that there was no willful violation during full workweeks precludes a determination of reckless disregard regarding deficiencies in the same plan.**

The evidence Appellees pointed to as willful disregard of the FLSA is that Appellants' outside counsel, Broussard, told Beagle that Appellees could be paid "overtime in addition to day rates" or an "hourly rate and overtime based on actual hours worked."  9CR:1750, 8CR:1522. Appellants do not deny that this information was conveyed while Appellants developed their pay plan.  In fact, they believed that the pay plan they established in collaboration with outside counsel was compliant with the FLSA, and an hourly rate with overtime.   The Arbitrator concluded that "[Appellants'] pay practices were not willful violations of the FLSA during workweeks in which Appellees worked seven days" and that Appellees "cannot collect damages for those workweeks because the Claims accrued entirely within the third year preceding this action."  3CR:466-495¶84. As the Arbitrator recognized, Appellants consulted with legal counsel in developing and implementing the pay plan. *Id*. ¶20.

However, the Arbitrator then decided that Appellants showed "reckless disregard for whether [their] pay practices complied with the FLSA during workweeks in which Claimants were issued Gross-Up Payments." *Id.* ¶85.  While

30

48

recognizing that the failure to consult with legal counsel is not alone sufficient to establish a willful violation of the FLSA, the Arbitrator determined that Appellants' outside legal counsel, Broussard, "had already advised [Appellants] that employees paid on a day-rate basis are entitled to additional overtime pay for any hours that they work over 40 in a workweek.  By paying the Gross-Up Payments to ensure workers received their 'per day' amounts), [Appellants] showed reckless disregard for whether they were in compliance with the FLSA during those workweeks."  *Id.* ¶87.

The Arbitrators' legal conclusion is erroneous as a matter of law, and the trial court improperly adopted it.  First, Appellants had already consulted with legal counsel regarding the development of the overall pay plan.  In fact, the alleged shorter week issues were a result of and based on the *very same alleged non-compliant pay plan* the Arbitrator had already concluded was *not* a willful violation. The Arbitrator instead isolated the issue relating to the Gross-Up Payments as constituting a willful violation seemingly because the potential problem was identified after Appellants sought legal advice on the pay plan.  Through the Gross-Up Payments, however, Appellants sought to pay Appellees *additional wages* in the form of bonuses that were equivalent to the targeted rates and pay plan already approved by outside legal counsel.  *Id.* ¶86.  The reliance on counsel at the outset in developing the payment plan should preclude a finding of willfulness.  *See Halferty*

*v. Pulse Drug Co., Inc*., 826 F.2d 2, 3 (5th Cir. 1987) (finding two year statute of limitations applied to Plaintiff's claims under the FLSA where employer consulted with an attorney about a compensation plan, precluding a finding of willfulness); *Johnson*, 604 F. Supp. 2d at 924 (employer did not willfully misclassify employees as required for the 3 year statute of limitations where employer's decision was based on advice of inside and outside counsel).

Second, rather than demonstrating a violation of the FLSA, Appellants' decision to pay bonuses during shorter workweeks demonstrates nothing other than that Appellants were instead engaging in continuing efforts to comply with the FLSA.  There is nothing about the additional payments that demonstrates any intentional conduct designed to avoid FLSA requirements.  The change was made to benefit Appellees, and regardless, the failure to seek legal advice again does not constitute willful conduct.  *See e.g. Allen v. Coil Tubing Serv., LLC*, 846 F. Supp. 2d 678, 713-14 (S.D. Tex. 2012) (granting summary judgment on limitations grounds on issue of willfulness for employer that failed to seek legal advice following change in payment method), *aff'd*, 755 F.3d 279 (5th Cir. 2014).

The Arbitrator's recognition that Appellants' pay practice resulted in the *same* alleged FLSA violation whether through the daily rate plan or "Gross-up" payments further precludes the Arbitrator's finding of willfulness.  The Arbitrator made a specific finding that:

> 79.    When Claimants worked seven days in a workweek, the pay
> practice resulted in them receiving an amount equal to or substantially
> equivalent to their "per day" amount for each day they worked,
> regardless of how many hours they worked.  When Claimants worked
> fewer than seven days in a workweek, the pay practice (through the use
> of Gross-Up Payments) *generated the same result*—Claimants received
> compensation equal to or substantially equivalent to their "per day"
> amount for each day worked, regardless of how many hours they
> worked.

3CR:490 ¶79 (emphasis added).   Thus, regardless of whether relating to shorter or

longer workweeks, this pay plan was at its inception created on advice of counsel,

and generated the same alleged result even when Gross-Up Payments were made—

a result that Appellants attempted to replicate for the shorter workweeks to fulfill the

lawyer-approved plan. At bottom, this finding only reinforces Appellants' position

that the additional payments were intended to support a pay plan already approved

by counsel.

Third, the advice from Broussard to Beagle—related to the development of

the pay plan overall—does not relate specifically to whether additional overtime

would be due with regard to *bonus* payments.   The Arbitrator's only finding

supporting the reckless disregard determination is that Broussard had already

advised Beagle generally in developing the plan that "employees paid on a day-rate

basis are entitled to additional overtime pay for any hours that they work over 40 in

a workweek."  3CR:492¶87.  But this legal advice is wholly unrelated to bonus

payments.  Further, Appellants believed that the plan as implemented was compliant

with the FLSA, and the Arbitrator pointed to nothing to demonstrate that Appellants were advised or on notice in any way that the bonus payments were somehow improper. *See Diedra Gettridge v. Civil Center Site Dev. Co*., No. CIV.A. 01-2434, 2002 WL 126574, at *2 (E.D. La. Jan. 29, 2002) (granting summary judgment for employer on "willfulness" issue where letter from employer's legal counsel did not advise that defendant's practices were in violation of the FLSA).

There is no legally sufficient evidence that Appellants willfully violated the FLSA when they made "gross-up" payments to Appellees. Despite acknowledging that the failure to consult with legal counsel does *not* establish a willful violation, the Arbitrator erroneously determined and the trial court agreed that earlier advice from Appellants' counsel relating to a "day-rate" payment plan—unrelated to Appellants' subsequent payment of bonuses—made Appellants' conduct "willful" and in reckless disregard of the FLSA. The Arbitrator even acknowledged that Appellants' pay plan was developed with the assistance of its outside legal counsel, Broussard. There is no legally sufficient evidence identified by the Arbitrator or trial court that would constitute willful conduct or reckless disregard of the FLSA.

### C. The Arbitrator's fact-findings do not demonstrate that Beagle, the Director of HR and decision maker, sought to willfully or recklessly violate the FLSA.

The Arbitrator pointed to nothing indicating that the person he identifies as the central decision maker—Beagle—had knowledge of a potential violation, or

34

acted with reckless disregard of the FLSA with regard to bonus payments. The Arbitrator made fact findings that "Beagle, acting on behalf of Mammoth Energy Services, developed the schedules, conditions of employment, payroll practices, and timekeeping practices at issue in this case." 3CR:473-74¶23. He also found that Beagle "imposed those conditions and practices upon employees of Five Star and Higher Power, including [Appellees]." *Id.* ¶23. The Arbitrator also made multiple findings that Beagle gave instructions regarding how to apply these pay practices. *Id.* ¶22-23. Nonetheless, the Arbitrator also recognized that Beagle "communicated with Steve Broussard (outside legal counsel) regarding the work hours and compensation structure for [Appellees] on numerous occasions leading up to the implementation of the practices at issue in this matter." *Id.* ¶20.

In deciding Appellants acted willfully, the Arbitrator only references testimony from Layton and Broussard that legal counsel was not consulted with regard to gross-up payments specifically. 3CR:491-92¶86. The Arbitrator points to nothing attributing any specific knowledge of potential FLSA violations regarding the gross-up payments, or any intentional or willful conduct to Beagle or any manager for Appellants. *See Brock v. Claridge Hotel and Casino*, 711 F. Supp. 779, 782 (1989) ("what was essential for the government to have shown, and what it failed to prove, was that the individual responsible for enforcing the [plan] knowingly or recklessly failed to do so.").

35

Contrary to controlling legal standards, the Arbitrator found a "willful" violation simply because Appellants themselves identified a potential issue when employees worked a shorter workweek, and elected to make additional payments to those employees to make sure that they were fully compensated under the existing pay plan. The Arbitrator even acknowledged in his findings of fact that "the Gross-Up payments were based on a formula designed to ensure Claimants received their 'pay day' amount for each day worked." 3CR:482-83¶55, citing Ex. 90 (email from Beagle explaining that the wages will be "grossed up" if they "do not equal out to the day rate."). The evidence the Arbitrator relies on demonstrates nothing more than that Appellants sought to comply with the FLSA. *Id.* ¶53 ("Davis and JD Kinsey regularly tracked this information and manually entered Gross-Up Payments to ensure that employees received their "per day" compensation."); *id.* ¶56 ("Gross-Up Payments were necessary to ensure that Claimants in fact received their "per day" amount."). As a matter of law, providing the additional gross-up payments cannot constitute a willful violation of the FLSA, especially where Appellants received advice from legal counsel to develop their overall pay plan. There is insufficient evidence to support a finding of reckless disregard or willfulness under applicable legal standards.

36

**III.   There is No Evidence and Insufficient Evidence that Mammoth Energy Services was Appellees' Employer.**

The Arbitrator wrongly decided that Appellees were employed with Mammoth Energy Services.  3CR:474¶24.  Mammoth Energy Services is a public entity that has no employees.   3CR:470¶13.   Mammoth Energy Services, the corporate parent to Mammoth Energy, Inc., is a distinct legal entity from its separate subsidiary.   Mark Layton, CFO, and Jeff Beagle, Vice President of HR, the individuals involved in developing a payment plan, were employed with Mammoth Energy, Inc.  *Id.* ¶13.   Appellees never asserted any claims against Mammoth Energy, Inc. in this lawsuit.  *Id.* ¶13 n.11.

The Arbitrator agreed that Higher Power and/or 5-Star were Appellees' "undisputed employers."  3CR468-69¶10.  All Appellees' supervisors worked for 5-Star and/or Higher Power, Appellees' paystubs and offer letters identified only those Appellants, and Appellees applied for employment and attended orientations with either 5-Star and/or Higher Power.  Nonetheless, the Arbitrator made the bold leap that Mammoth Energy Services was also their employer, ignoring key factors for establishing an employer relationship under the "economic realities" test.  The Arbitrator's finding is not supported by legally sufficient evidence, and the trial court's judgment adopting that finding should be reversed.

37

55

**A.      The economic realities factors preclude the finding that Mammoth Energy Services was Appellees' employer.**

As the Arbitrator recognized, the Fifth Circuit applies an "economic reality" test to decide whether a joint employment relationship exists.  *Gray v. Powers,* 673 F.3d 352, 355 (5th Cir. 2012) (citing *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33 (1961)).  The factors for the economic reality test include: (1) the power to hire and fire the employees, (2) supervision or control over employees' work schedules or conditions of employment, (3) determination of the rate and method of payment, and (4) maintenance of employment records.  *See Gray*, 673 F.3d at 354-55 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)); *accord Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (recognizing that the "economic reality" test includes those same four issues).

The Arbitrator acknowledged that that there was insufficient evidence of the first factor of the test—the power to hire and fire.  3CR:471-72¶16.  The Arbitrator also acknowledged that the maintenance of employee records factor weighed only "slightly" in favor of a finding that Mammoth Energy Services was an employer.  However, that conclusion was based solely on the Arbitrator's acknowledgement that many records reference only "Mammoth Energy," without reference to any

38

specific corporate entity.[8]   3CR:472¶17.   Further, the Arbitrator failed to acknowledge that there is no evidence that Mammoth Energy Services maintained records of the hours Appellees worked—the most critical indicia of maintaining records under the FLSA.  *See Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 144 (2d. Cir. 2008) (noting that records of hours worked are the "employment records on the matter most relevant to overtime obligations under the FLSA"); *Godlewska v. Human Dev. Ass'n, Inc.*, 916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd*, 561 F. App'x 108 (2d. Cir. 2014) (holding that where "maintaining employment records is primarily [a contractor's] responsibility, and [a putative joint employer's] review of certain records is 'only an extension' of [the putative joint employer's quality control procedures,… the fourth factor is not satisfied.").

The Arbitrator wrongly based his decision that an employment relationship existed primarily on the remaining two factors—supervision and control over Appellees' work schedules or conditions of employment, and determination of pay rate and method of payment.  *See Gray*, 673 F.3d at 355.  The Arbitrator concluded that "Beagle, acting on behalf of Mammoth Energy Services, developed the schedules, conditions of employment, payroll practices, and timekeeping practices at issue in this case."  3CR:473-74¶23.  However, Beagle worked for Mammoth

---

[8]   Given the equal inference that the broad references to "Mammoth" related to a different Mammoth entity, this is no evidence that Mammoth Energy Services was Appellees' employer. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813-14 (Tex. 2005).

Energy, Inc. as Mammoth Energy Services does not have employees. *Id.* ¶13.

Even if Beagle "functioned" as Director of Human Resources for Mammoth Energy Services, *see id.* ¶13, ¶20, the Arbitrator made no findings that Mammoth Energy Services (which has no employees), changed the schedule of any Appellee or supervised any Appellee. Rather, "[j]oint employer status depends, in part, on whether supervision goes beyond general instructions," such that the potential joint employer takes an "overly active role" in the oversight of the employee. *In re HMR Food Holding, LP*, 602 B.R. 855, 870 (Bankr. D. Del. 2019), citing *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1178 (11th Cir. 2012). No such evidence exists here.

Moreover, even if Beagle assisted in the development of the overall pay plan, Mammoth Energy Services did not determine the rate and method of payment of Appellees' compensation. *See Gray*, 673 F.3d at 355. Mammoth Energy Services merely provided HR, accounting and support services to subsidiaries, including 5-Star and Higher Power. Control over funds available for payroll and bonuses is not sufficient to meet the economic realities test. *See e.g. Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 149 (D. Mass. 2013) (parent company's centralized human resources and payroll records insufficient to show parent company exercised control over plaintiff's employment conditions). The

Arbitrator's decision that Mammoth Energy Services was Appellees' employer is not supported by legally sufficient evidence.

**B.     The Arbitrator made no findings of "operational control" necessary to establish the existence of an "employer" relationship.**

The Arbitrator decided that a publicly traded corporate entity with no employees—Mammoth Energy Services—was the "employer" of Appellees who undisputedly worked for subsidiary companies.   3CR:474¶24.   To hold a parent company liable under a joint employer theory for alleged FLSA violations, the Fifth Circuit requires a showing of "actual operational control" over the employment of the employees.   *Gray,* 673 F.3d at 355.   In the context of corporate entities, there is a "strong presumption that a parent corporation is not the employer of its subsidiary's employees," and "[o]nly evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary . . . is sufficient to rebut this presumption." *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 778 (5th Cir. 1997) (emphasis added).   Indeed, "it should not lightly be inferred that Congress intended to disregard [corporate form] in the context of the FLSA." *Gray*, 673 F.3d at 356 (quoting *Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668, 677 (1st Cir. 1998)); *also see In re Enterprise Rent-A-Car Wage and Hour Employment Practices Litig*., 683 F.3d 462, 471 (3d Cir. 2012) (parent company was not joint employer with subsidiaries' managers under the FLSA); *Maddock v. KB Homes,*

41

*Inc.*, 631 F. Supp. 2d 1226, 1237 (W.D. Cal. 2007) (parent corporation was not joint employer of subsidiary's employee under the FLSA).

The Arbitrator made no findings that Mammoth Energy Services possessed any operational control over 5-Star or Higher Power. The Arbitrator's findings that Beagle developed pay practices for subsidiaries through his HR position did not equate to establishing operational control over those entities. The Arbitrator pointed to nothing to show that Beagle's HR role allowed him to control the manner in which Appellees conducted their job duties, the hours they worked, or that he had any ability to manage or discipline employees. Nothing about Beagle's exercise of his HR responsibilities was legally sufficient to permit the disregard of corporate formalities. As a matter of law, the Arbitrator's decision that Mammoth Energy Services was Appellees' employer (affirmed by the trial court) should be reversed, and judgment rendered against Jordan Rodriguez who was employed with Cobra Energy, an entity not a party to this dispute. 3CR:468-69¶10.

## IV. The Award of Attorneys' Fees and Costs is Not Supported by Sufficient Evidence.

The Arbitrator awarded Appellees collectively $439,129.35 in attorneys' fees and $33,652.65 in costs, and this court affirmed that award. 4CR:713-53¶2. The Arbitrator exceeded his authority in awarding fees, and the award should be reversed, or alternatively, significantly reduced. 7CR:1390-1438 (Appellants' Response). First, the Arbitrator exceeded his authority in awarding fees collectively

to Appellees instead of as "*to each party*" as the Arbitration Agreement required. 3CR:542 (emphasis added).  Second, the fees awarded are not supported by legally sufficient evidence because the Arbitrator improperly failed to apply the reasonable rates in Puerto Rico—the place the parties agreed as the locale for arbitration. 3CR:541-42.  Third, the fee award is excessive in that it is four times the amount of the Appellees' damage recovery. 4CR:713¶2.  The evidence is legally insufficient to support the fee award.

### A.   The Arbitrator exceeded his authority in failing to award attorneys' fees on a "per party" basis.

The parties' Arbitration Agreement clearly provides that "arbitrations shall be conducted as individual claims and each resolved in a single arbitration between the employee and the Company."  3CR:541-42.  The Agreement further states that disputes "shall be resolved by an arbitrator selected by the Company and the employee to arbitrate their individual disputes and no other, even identical, disputes with a third-party or other current or former employee of the Company."  *Id.*  The Agreement also states that if damages are awarded, the award must "specif[y] the arbitrator's calculations of the types of damages awarded *to each party*."  *See id.* (emphasis added).  The parties subsequently agreed to a series of three separate arbitration hearings over several days including a select grouping of 29 claimants and Appellants in Puerto Rico before a single arbitrator.  While the parties agreed to

43

the collective presentation of evidence and consolidated briefing, there was no agreement to any consolidated damage awards.

The Arbitrator's decision to award fees on a collective basis, contrary to the plain language of the Arbitration Agreement, caused Appellants to be responsible for fees that should not otherwise have been awarded, and are not plainly attributable to work performed for the prevailing Appellees. Included in the collective damage award are hours allegedly expended by Appellees' counsel in representing Claimants who either: (1) recovered nothing on their claims; (2) dropped their claims; or (3) failed to show up to their arbitration hearings. There are at least three Claimants who received no monetary recovery from the Arbitrator: Dennis Conners, Anthony Eaton, and Aaron Smith. 4CR:751-52¶92-93. Furthermore, there are an additional twelve Claimants who never appeared for the arbitration hearing, or otherwise dismissed their claims. 4CR:755. Thus, any work performed on behalf of fifteen of the forty-one original Claimants—36% of the group—is not compensable. In fact, the time records make no effort to differentiate between the Claimants who recovered on their claims, and those who were dismissed or achieved no recovery. It is plainly evident that these Claimants were included in the time records and in the fee award. Ultimately, the Arbitrator only reduced the amount recoverable by a scant 20.5 hours. 4CR:719¶21.

Appellees' counsel's time records reference work performed on behalf of unidentified claimants generally throughout the records.   4CR:794-96 (1/5/21: "Conference with potential plaintiffs"); (1/4/21: "Multiple calls to and from PC's re: facts of case"); (2/18/22: "Multiple conferences with multiple plaintiffs..."); (2/4/22: "Review spreadsheets created for each individual Claimant"); (3/13/22: "Prepare revised damage analysis for each claimant…").  Because specific claimants are not identified, it is impossible to ascertain how much of the work performed was on behalf of those for whom attorneys' fees could be recoverable.  Indeed, most of those time entries are for the period leading up to the arbitration hearing in Puerto Rico in which many Claimants simply did not appear, and were subsequently dismissed.

The associated hourly fees involved in prosecuting this case on behalf of non-party Claimants are not recoverable, and those fees should not have been included in the fees awarded to Appellees.   In fact, there are numerous time entries specifically referencing work performed on behalf of one or more dismissed Claimants.  4CR:801-08 (4/20/22: "Reviewing list of Claimants who have dropped out"); (11/12/21: Disengaging Billy Evans); (3/31/21: Disengaging Coleman Yeager); (8/24/21: Disengaging/dismissing plaintiffs"); 4CR:821 (2/28/22: "Review documents in preparation for Gary Wall deposition").  Appellants are not responsible for fees incurred with regard to those Claimants who are not prevailing parties in this dispute.  *See Randolph v. PowerComm Constr., Inc.,* 780 F. App'x 16, at *23

45

(4th Cir. 2019) (per curiam) (district court abused its discretion in award of attorneys' fees in FLSA case where 15% of plaintiff employees were dismissed).

It is the burden of the requesting party to produce supporting documentation that allows a court to verify the applicant's entitlement to a specific fees award. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). The Arbitrator should have either made a greater reduction in fees or eliminated hours from the fee award because the supporting documentation was too vague or incomplete to permit meaningful review. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995). "A party's obligation to properly document hours worked is not satisfied by a vague entry such as 'conference with' or 'call to' a particular person." *Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *4 (S.D. Tex. July 21, 2021).

Appellees' counsel's time entries only vaguely describe the work that was performed. While one billing entry states, for example, "Conference with Terrence Summers," the others only generally reference "conference with potential plaintiffs," or "multiple conferences with multiple plaintiffs." 4CR:794-99. These entries are far too vague to attribute that work to fees awarded to recovering Appellees individually. *See Produce Pay, Inc.*, 2021 WL 5155715, at *5 (excluding time spent on redacted entries that only described "email to client," "confer with client," "update client," "email with opposing counsel," etc.); *Fralick v. Plumbers & Pipefitters Nat. Pension*

46

*Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (reducing attorneys' fees award because of descriptions involving correspondence and telephone conferences that did not specify the subject matter or participants). The Arbitrator exceeded his authority in awarding fees that do not identify the claimants on whose behalf the work was performed, and do not appropriately describe the work performed.

### B.   The Arbitrator exceeded his authority in applying hourly rates outside of Puerto Rico.

A reasonable hourly rate is determined based on the prevailing rate for attorneys with similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The parties' Arbitration Agreement provides that the arbitration "shall be conducted in the city where the employee performed services for the Company." 3CR:541-42. Therefore, the parties' arbitration took place in Puerto Rico, and that locale served as the "relevant market" for purposes of assessing the hourly rate for attorneys' fees. *See Vieques Conserv. and Historical Trust, Inc. v. Martinez*, 313 F. Supp. 2d 40, 46-47 (D. P. R. 2004) (reducing rate of out of town specialist to rates in Puerto Rico where there were local environmental lawyers available); *also see Morgan Stanley DW, Inc. v. ESCAM Trust No. 280905,* No. 04-61628-CIV, 2006 WL 8432333, at *4 (S.D. Fla. Feb. 10, 2006) (where arbitration took place in South Florida, the plaintiffs could only be awarded fees at South Florida rates); *also see Tollett v. City of Kemah*, 285 F.3d 357,

47

368 (5th Cir. 2002) (the relevant legal market is the community where the district court sits).

Under First Circuit law (the law of the locale where the arbitration here took place), there is a presumption that the proper rate to be applied to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which he or she practices. *See Martinez*, 313 F. Supp.2d at 46-47, citing *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). A plaintiff seeking to recover fees at out-of-town rates must show that the "complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 103 (D. Mass. 1998) (finding that Plaintiffs failed to show that out-of-town counsel was required due to lack of competence in the local bar). A court can award out-of-town rates if it concludes two things: first, that retention of an outside specialist was reasonable, as members of the local bar were unable or unwilling to litigate the matter, and second, that the retained attorney is an expert, or specialist in the required area of law, possessing specialized skills or knowledge that the local bar cannot muster. *See Rhode Island Med. Society v. Whitehouse*, 323 F. Supp. 2d 283, 293 (D. R.I. 2004), citing *Maceira v. Pagan*, 698 F.2d at 40. No evidence supports the Arbitrator's findings on either point.

48

The Arbitrator here awarded hourly rates based on similar rates charged by attorneys representing claimants in FLSA matters in *Texas*, and not in Puerto Rico. 4CR:714-15¶7.  The Arbitrator awarded Appellees fees at premium rates charged in larger cities such as Houston and Dallas, granting a rate of $585.00 per hour for Doug Welmaker, $585.00 per hour for Josef Buenker, and $485.00 per hour for Aaron Johnson.  4CR:718¶17.  The Arbitrator erroneously decided that Texas rates should apply because "none of the lawyers in this case regularly practice in Puerto Rico."  4CR:714-15¶7.   However, the view that the relevant community should be the place where the attorneys reside is not the prevailing view, and is certainly not the relevant test.  *See Garmong v. Montgomery Cty.*, 668 F. Supp. 1000, 1007 (S.D. Tex. 1987) (recognizing that the position that the relevant market should be where the lawyers reside "is clearly at odds with the universally accepted rule that the rate to be applied in attorneys' fees litigation is that of the forum district.").

The Arbitrator also summarily concluded that "Puerto Rico plaintiffs' wage-and-hour bar is not sufficiently broad enough to justify assigning Puerto Rico rates for this matter, particularly in light of the evidence submitted regarding the complexity of this matter and the undesirable nature of the claims."  4CR:714-15¶7. However, the recovery of non-local rates is permitted only where a fee applicant establishes that no local attorneys were willing and able to handle the claim.  *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).   The Arbitrator

referenced the declaration of another Texas wage and hour lawyer, Rex Burch, who made the conclusory and unfounded assumptions that the seven FLSA cases he located on PACER filed in Puerto Rico 2021 and 2022 were insufficient "to sustain a wage and hour bar." 4CR:715-16, 833. He made no effort to identify the lawyers in those cases, whether they were contacted, or to address the substance of those disputes and whether those matters were comparable or involved counsel more or less experienced than Appellants' counsel.[9]  4CR:830-33. Furthermore, his declaration included no discussion at all about whether he inquired beyond his identification of FLSA matters filed in Puerto Rico in the prior two years. *Id.*

Similarly, Dale O'Neal, a tax lawyer, made the conclusory statement in his declaration that "he sought to find Puerto Rico based attorneys, but was unable to find anyone in Puerto Rico that was willing to take [Claimants'] cases or that had the capacity to take on multiple Plaintiffs…" 4CR:828-29. Notably, Mr. O'Neal identified at least *four Texas* firms he contacted to undertake Appellees' representation for their FLSA claims. *Id.* However, he identified no specific lawyer or firm he allegedly contacted in Puerto Rico regarding this case other than his conclusory statement that he could not "find anyone."[10] *Id.*

---

[9] Appellants objected to Rex Burch's testimony as conclusory and that it should have been disregarded. *See Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994).

[10] Appellants likewise objected to O'Neal's testimony as unfounded and conclusory. *See Carrozza*, 876 S.W.2d at 314.

Appellees offered no admissible or relevant evidence that they made any legitimate attempt to retain counsel in Puerto Rico, and that they were unable to locate counsel in that area. *See e.g. Morgan Stanley DW, Inc.,* 2006 WL 8432333, at *4 (recognizing that qualified attorneys exist in South Florida where arbitration took place who could arbitrate securities claims, and that those rates should apply); *Whitehouse*, 323 S.W.2d at 293 (declining to allow out-of-town rates). In fact, as even the Arbitrator acknowledged, the declaration of Juan Santos, a lawyer practicing in Puerto Rico, demonstrates that there is an abundance of very competent FLSA wage and hour attorneys from the plaintiff's bar in Puerto Rico. 4CR:714¶6. Despite this evidence, the Arbitrator wrongly concluded that "Puerto Rico plaintiffs' wage-and-hour bar is not sufficiently broad enough to justify assigning Puerto Rico rates for this matter, particularly in light of the evidence submitted regarding the complexity of this matter and the undesirable nature of the claims." *Id.* ¶7.

The rates for attorneys practicing in Puerto Rico differ substantially from the rates charged in Houston and Dallas. Mr. Santos practices with Jackson Lewis, LLC in Puerto Rico, and testified that the average rates charged by lawyers in Puerto Rico is between $250.00 and $400.00 per hour in an FLSA employment dispute. 7CR:1417-18. Appellees provided no evidence at all of the rates charged in the Puerto Rico market. By applying rates charged in Texas as opposed to Puerto Rico, the Arbitrator exceeded his authority specifying Puerto Rico as the relevant

community.   The evidence is also legally insufficient under applicable legal standards to support the Arbitrator's decision that Texas fee rates should apply here. *See Skytec, Inc. v. Logistic Sys., Inc.*, Civil No. 15-2104, 2019 WL 1271459, at *5 (D. P.R. Mar. 15, 2019) (finding that "Puerto Rico must serve as the relevant community to determine fees"), *amended*, 2019 WL 2246775 (D. P.R. May 23, 2019); *Wagenmann v. Pozzi*, No. 79-1658-F, 1986 WL 11754 *3-4 (D. Mass. Oct. 17, 1986), *aff'd*, 829 F.2d 196 (1st Cir. 1987) (finding that Boston was not the relevant community and applying lower local rates).

Furthermore, even if the city where counsel resides was the relevant inquiry, Appellees' counsel, Mr. Welmaker, resides in *Longview, Texas*, and his legal office is also located there.  Mr. Welmaker has no office in Houston.  Furthermore, before referral to arbitration, this lawsuit was originally filed in federal court in the Western District of Texas.  Therefore, it was also improper for the Arbitrator to look to comparable rates charged by experienced employment counsel in Houston, or even in the Northern District of Texas.[11]  Even if arguably the relevant market were in Texas, it would certainly not be in Houston or Dallas.

---

[11] Notably, the declaration Appellees offer in support of their fee petition from Allen Vaught included testimony as to the regular rate charged in the Northern District of Texas and the Dallas-Fort Worth area.  4CR:881-88¶22.  The declaration of Drew Herrmann also opines on rates in the Northern District of Texas.  4CR:889-94¶7.  Rex Burch does not address any specific market community where the rates requested by Appellees' counsel are comparable. 4CR:830-33¶14.

52

C.     **The Arbitrator's fee award is excessive.**

Even if the Arbitrator's decision to combine the fee award as to all Appellees did not violate the arbitration agreement, the Award is still grossly excessive taking into consideration the moderate degree of success obtained.  While recognizing that the amount of fees should be reduced to account for claimants who dropped their claims or were dismissed, the Arbitrator only reduced the fees requested by a mere 20.5 hours.  4CR:71719-21¶¶21, 26.  The Arbitrator expressly declined to reduce fees based on the fact that several claimants received only meager awards of $200-$300.00.  *Id*. ¶26.  And while the Arbitrator agreed with Appellants that fees should be reduced based on the overall success obtained, and taking into consideration that some claimants did not recover or dropped their claims and unsegregated billing, he reduced the fees requested by only 10%--a meager figure especially given that he applied premium Texas rates to a Puerto Rico case.  *Id*. ¶27.  The Arbitrator also wrongly failed to address other reasons Appellants asserted as further grounds for reduction in fees, including unreasonable billing entries and inadequate segregation of fees.  7CR:1390-1438.  The fee award is excessive on a collective basis, and the fees requested should have been properly segregated.

53

**1.    The Arbitrator's 10% reduction in fees on a collective basis based on Appellees' moderate level of success is grossly inadequate.**

The Fifth Circuit has made clear "that the most critical factor in determining an attorneys' fees award is the degree of success obtained." *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013).   Success in an FLSA case is measured by comparing the amount of damages awarded to the amount of damages sought. *Combs v. City of Huntington, Texas*, 829 F.3d 388, 395-96 (5th Cir. 2016).  Where plaintiffs achieve only partial success on an FLSA case, the lodestar amount should be reduced.  *See, e.g.*, *Pineda v. JTCH Apartments, LLC*, 126 F. Supp. 3d 797, 806 (N.D. Tex. 2015) (reducing the lodestar amount by 25% to account for a limited recovery).

If fees had been properly segregated by claimant, the fees would have been far lower than the unsegregated fees awarded on a collective basis.  Even aside from the segregation issue, Appellees overall achieved only limited success warranting a far greater reduction of the lodestar amount.  First, Appellees received only a limited recovery in this case because their claims were largely time-barred.  Furthermore, the Arbitrator determined that there were no willful violations of the FLSA during workweeks where claimants worked a full seven days, precluding Appellees from recovering damages for those workweeks.   3CR:474¶24.  Similarly, Appellees received an adverse finding on the joint employer issue with regard to Cobra

Acquisitions and could receive no damages from that defendant.  Accordingly, the fees requested should have been further reduced to account for the fact that the limitations bar and other adverse findings impacted Appellees' ultimate recovery. *See Randolph v. PowerComm Constr., Inc*., 715 F. App'x 227, 231-32 (4th Cir. 2017) (per curiam) (district court abused its discretion in failing to deduct from employees' award of attorneys' fees in FLSA case time spent pursuing claims barred by limitations); *Riddle v. Tex-Fin, Inc.*, No. H-08-3121, 2011 WL 1103033, at *12 (S.D. Tex. Mar. 22, 2011) (reducing the lodestar in half where plaintiff only recovered a portion of the overtime hours claimed); *Castro v. Precision Demolition LLC*, No. 3:15-CV-0213-D, 2017 WL 6381742, at *7-8 (N.D. Tex. Dec. 14, 2017) (reducing the lodestar amount where the plaintiff did not succeed on all claims asserted at trial).

Second, although there were originally forty-one claimants, approximately twelve of them dropped their claims during the course of the litigation.  Additionally, another three received no recovery at all.  3CR:494-95.  Further, three more Claimants recovered only nominal damages in the amount of approximately $200-$300.00.  *Id.*  In total, eighteen of the forty-one Claimants—almost half of the original group—received nothing or next to nothing.  Incredibly, however, the Arbitrator's collective fee award reduced the amount of fees requested *by only 10%* allowing Appellees a windfall in attorneys' fees for which they were not entitled to

55

recover.  4CR:733¶27.  The law requires that the amount of fees to be awarded must also account for the level of success achieved, and the moderate level of success achieved in this case further justified a reduction in the attorneys' fee award.  *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (for a plaintiff who is a prevailing party, but is awarded no more than nominal damages, "the only reasonable fee is usually no fee at all."); *Wesley v. Yellow Transp., Inc.*, Nos. 3:05-CV-2266-D, 3:05-CV-2271-D, 2010 WL 4629972, at *5-6 (N.D. Tex. Nov. 8, 2010) (memo. op.) (reducing lodestar amount based on plaintiff's partial success); *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008) (upholding a 50% reduction in the lodestar based on the limited amount recovered in the FLSA claim).

In summary, Appellees' fee request should have been reduced because Appellees did not establish that the hourly rates claimed by their counsel are reasonable; because the alleged hours expended for Appellees who received no recovery at all should be excluded from the lodestar calculation; and because the lodestar calculation should be reduced to properly reflect Appellees' limited success in this case.

### 2. Unsegregated and unreasonable billing entries required a further reduction in the requested fees.

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the hours billed and proving that they exercised billing judgment. *Saizan v. Delta Concrete Products Co., Inc*, 448 F.3d 795, 799 (5th Cir. 2006).

"Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* at 799 (footnote citations omitted).  Hours that are not billed properly to one's clients are also not billed properly to one's adversary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  One remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Saizan*, 448 F.3d at 799.  Alternatively, the Arbitrator can conduct a line-by-line analysis of the time reports and deduct those entries deemed unrecoverable from the total fees awarded. *See Aguayo v. Bassam Odeh, Inc*., No. 3:13-CV-2951-B, 2016 WL 7178967, at *4 (N.D. Tex. Dec. 8, 2016).  Because Appellees failed to demonstrate the reasonableness of many of the billing entries and fees they sought to recover, the fees awarded were excessive.

In awarding attorneys' fees, the Arbitrator failed to take into consideration that most of the work in the case was performed by one lawyer—Mr. Welmaker. However, the other two lawyers assisting on the case, Josef Buenker and Aaron Johnson are also senior lawyers.  Mr. Buenker has been licensed for over 30 years, and Mr. Johnson has practiced for over 15 years.  4CR:819-25.  The fact that Appellees' counsel chose to staff this case with senior lawyers and no associates is overstaffing, and a court "may reduce individual attorneys' rates to compensate." *Calsep A/S v. Intelligent Petroleum Software Sols. LLC*, No. 4:19-CV-1118, 2022

57

WL 508334, at *5 (S.D. Tex. Feb. 18, 2022).  Counsel's choice to primarily use partners on the case "demonstrates unreasonable rates, as associates could have done much of the work partners performed at lower billing rates."  *Id*.; *see also, Gill v. Bullzeye Oilfield Services, LLC,* No. SA:15-CV-1166-DAE, 2018 WL 4677902, at *5 (W.D. Tex. July 19, 2018).

Furthermore, much of the work performed by Appellees' counsel equated to clerical work, and was not recoverable at an attorneys' rate.  *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (distinguishing pure legal work and investigation from "clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers," and stating that the dollar value of non-legal work "is not enhanced just because a lawyer does it."). Among other entries, Appellees' counsel includes multiple billing entries preparing data entry or clerical work.  4CR:794-95 (1/27/22 (7.9 hours): ("Sorting and coding" documents produced by Respondents)); (2/1/22 (7.5 hours) ("code each document" produced by Respondents)); (2/2/22 (5.7 hours) ("prepare spreadsheets for each client")).  Because clerical or secretarial costs are part of an attorney's office overhead and are reflected in his billing rate, parties must avoid billing for clerical work.  *See Meadows v. Latshaw Drilling Co., LLC*, No. 3:15-CV-1173-N, 2020 WL 291582, at *4 (N.D. Tex. Jan. 21, 2020).  Appellees should not have been awarded fees for time entries that could easily be performed by clerical personnel or a legal assistant.

58

Moreover, the Arbitrator made only a modest reduction in the rates charged for travel time. 4CR:719-20¶¶22-23. To the extent that the arbitration agreement requires application of Texas law, "[c]ourts in the Fifth Circuit often reduce compensable hours for travel." *Gill*, 2018 WL 4677902, at *4 (collecting cases). Appellees' counsel's billing records demonstrate that they billed a significant amount of travel time, and much of that time was for travel related to specific Claimants. For example, Mr. Welmaker billed travel time for meeting with specific clients and to Puerto Rico for specific arbitration hearings relating to small clusters of Claimants. 4CR:795-99, 811 (2/16/22 (4.3 hours: "Drive to and from Dallas from Baltazar Oyervides deposition"); (2/16/22 (4.2 hours: "Travel to and from Dallas for Enrique Sanchez deposition"); (3/23.22 unspecified drive time for witness preparation); (4/2/22: 12.5 hours: "Flight from San Juan to Longview"); (5/5/22: 13 hours: "Travel from San Juan to Longview"); (11/13/22: 5.5 hours: "Travel time with no work"). Similarly, Mr. Buenker also billed for travel time for work regarding other specific claimants. 4CR:822 (3/1/22: 3.4 hours: "Drive to and defend the deposition of Joel Salazar"). Nonetheless, those charges were allocated to the entire group. Thus, this time should have been excluded from any fee recovery or allocated to the Appellee to whom the charge related, if any.

While the Arbitrator recognized the applicability of the ten *Johnson* factors in deciding whether a lodestar figure should be adjusted, he did purport to apply any of

59

77

them other than the results obtained in the case.  4CR:720-21¶24.  The Arbitrator's failure to consider all the *Johnson* factors also requires a vacation of the fee award. *See e.g. Gagnon v. United Technicsource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (vacating and remanding fee award for consideration of the *Johnson* factors because a reviewing court cannot simply assume that the lower court considered those factors when not discussed in the ruling).   The Arbitration Agreement required the Arbitrator to "issue a reasoned award that: applies the facts to the law of the case; fully sets forth findings of facts and evidence presented; fully sets forth conclusions of law based upon the parties' respective legal theories; indicates which legal theories were followed, which were not and why."  3CR:541-42.  Without any factual findings as to all the *Johnson* factors, "it is impossible to determine whether the [Arbitrator] 'sufficiently considered the appropriate criteria.'"  *Gagnon*, 607 F.3d at 1044.  The fees awarded were excessive and should be disallowed or reduced.

### D.    The Arbitrator also exceeded his authority in awarding costs beyond those allowable under 28 U.S.C. §1920.

The Arbitrator also exceeded his authority in awarding Appellees costs and expenses in the amount of $33,652.65, as they are not recoverable under 28 U.S.C §1920.   4CR:722¶28.   Further, the Arbitration Agreement provides that it is governed by Texas law and "the United States Code."  3CR:542.  Appellees sought costs and expenses for, among other things, "case filing, process service, arbitration filing, printing, airfare, hotels, parking, uber/taxis, meals, and software."

60

4CR:722¶28.   The majority of these costs are beyond the limited types of costs recoverable under 28 U.S.C §1920, and were not properly segregated as costs pertaining to work performed for any particular claimant.   The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon*, 607 F.3d at 1045.

Texas courts have followed the Fifth Circuit's decision in *Gagnon* in limiting recoverable costs to those authorized under in §1920.   *See e.g. Champion v. Phaselink Utility Solutions, LLC*, No. SA-22-CV-00145-JKP, 2022 WL 3693461, at *10 (W.D. Tex. Aug. 24, 2022) (following *Gagnon* in denying costs beyond those allowed in §1920); *Fernandes v. Northline Enter.*, No. H-21-482, 2022 WL 3229510, at *4 (S.D. Tex. July 25, 2022) (same).   The Arbitrator relied on less recent cases from the Seventh and Fourth Circuits in asserting that there is a split of authority on the issue of whether costs are limited to those recoverable under §1920, but those non-Texas federal cases are not controlling here.[12]   Further, the Supreme Court has observed that the scope of taxable costs is "narrow," and "limited to relatively minor, incidental expenses" as set forth in § 1920.   *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

---

[12] *See* 4CR:722¶29 n.24, citing *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988).

The Arbitrator awarded Appellees considerable costs outside of the ambit of §1920, including costs for travel, taxis and uber rides, parking, lodging, meals, and text messages.  4CR:722¶¶28-30.  Moreover, the Arbitrator failed to make any fact-findings relating to the cost award, stating only generally that they were "reasonable and necessary."  *Id.* ¶29.  However, the Arbitrator made no effort to correlate those costs—rides, lodging, travel or meals—as relating to work performed for any particular claimant.  This rote conclusion without any analysis is insufficient to support any award of costs.  *See Gagnon*, 607 F.3d at 1045 (vacating cost award and remanding for further proceedings where district court failed to make fact findings as to whether copying costs were "necessarily obtained for use in the case.").  Therefore, because the Arbitrator failed to make the necessary findings, and the costs awarded are beyond §1920, the cost and expense award should be reversed.

## Conclusion

The trial court's judgment should be reversed and rendered in favor of Appellants. Alternatively, the case should be reversed and remanded to the trial court for reconsideration of the merits of Appellants' arguments under the standards provided in the Arbitration Agreement.  Appellants respectfully request such other and further relief to which they are justly entitled.

**PORTER HEDGES LLP**

*/s/ William R. Stukenberg*
William R. Stukenberg
State Bar No. 24051397
wstukenberg@porterhedges.com
Lauren B. Harris
State Bar No. 02009470
lharris@porterhedges.com
Eugene M. Nettles
State Bar No. 14927300
emnettles@porterhedges.com
M. Harris Stamey
State Bar No. 24060650
hstamey@porterhedges.com
Mary Anna Rutledge
State Bar No.  24096149
mrutledge@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6611
Facsimile:  (713) 226-6211

***Attorneys for Appellants,***
***Mammoth Energy Services, Inc.***
***Higher Power Electrical, LLC***
***5 Sar Electric, LLC***

63

### Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing document has been served upon the following counsel of record by electronic filing on May 31, 2024:

Douglas B. Welmaker
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Telephone: 512-799-2048
doug@welmakerlaw.com

***Attorney for Plaintiffs***

*/s/ William R. Stukenberg*
William R. Stukenberg

64

82

## Certificate of Compliance

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because this brief contains 14,274 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) and the type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

*/s/ Lauren B. Harris*
Lauren B. Harris