IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AARON MALDONADO, *et al.*, § § | |
| *Plaintiffs*, § § | |
| v. § § | Case No. 5:21-cv-00085-OLG |
| MAMMOTH ENERGY SERVICES, § INC., COBRA ACQUISITIONS, LLC, § HIGHER POWER ELECTRICAL, LLC, § and 5 STAR ELECTRIC, LLC, § § | |
| *Defendants*. § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF DEFENDANTS SUMMARY JUDGMENT EVIDENCE

Defendants Mammoth Energy Services, Inc. ("Mammoth"), Cobra Acquisitions, LLC, ("Cobra"), Higher Power Electrical, LLC ("HPE"), and 5 Star Electric, LLC ("5 Star") (collectively, "Defendants") file this Response to Plaintiffs' Motion to Strike Portions of Defendants Summary Judgment Evidence (Dkt. 57) as follows:

**I.     Introduction**

Plaintiffs move to strike portions of Jeffrey Beagle's declaration provided in support of Defendants' Motion for Summary Judgment. Dkt. 43, Ex. 2 ("Declaration"). Plaintiffs' Motion to Strike is procedurally improper and substantively lacking. The Motion to Strike should be denied.

**II.    Legal Standards**

Federal Rule of Civil Procedure 56 allows a party to provide an affidavit to support or oppose a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). The affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

15545491

the affiant … is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[E]vidence may be considered on summary judgment provided 'its contents can be presented in admissible form at trial.'" *Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 325 (5th Cir. 2024) (quoting *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019)). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This basic standard of relevance "is a liberal one." *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### III.  Argument & Authorities

#### A.  Plaintiffs' motion to strike is procedurally improper.

As an initial matter, Plaintiffs' motion to strike should be analyzed as objections under Rule 56. "With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, motions to strike submitted on summary judgment are no longer appropriate." *Sims v. Event Operations Grp., Inc.*, 2019 WL 1301959, at *2 (N.D. Ala. Mar. 21, 2019). Now, the proper method is to object to the material. *S.ee* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also* Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 amendments) ("There is no need to make a separate motion to strike.").

#### B.  Plaintiffs cannot dictate the scope of the evidence Defendants rely on.

Plaintiffs complain that Defendants "cherry pick[ed] records" that are "irrelevant" from workers who are not parties to this lawsuit to include in their Motion for Summary Judgment. Dkt. 57 at pp. 2-3. Plaintiffs wield a sword and shield with this argument. On the one hand, they attack Defendants for pointing out payroll records for non-party workers that disprove their entire theory

2

of the case (i.e., workers did not always receive bonuses, therefore, it is apparent that the bonuses were discretionary and not obligatory to equal alleged day rates).[1]  *Id.*  On the other hand, they seek refuge by relying on deposition testimony taken **exclusively** in another case in which they were not parties (*Cantu, et al. v. Mammoth Energy Servs. et al.*, C.A. No. SA:19-cv-00615-DAE (W.D. Tex.)).  *See generally* Dkt. 54.  Plaintiffs cannot strike compelling evidence simply because it does not align with their motives.

In their Motion to Strike, Plaintiffs informally move the Court for permission to supplement the record with the time and pay records of other employees and for permission to reopen discovery to depose Beagle.  These requests ring hollow.  To the extent Plaintiffs could offer additional evidence, the vehicle to do so was in their Response to Defendants' Motion for Summary Judgment, which was filed contemporaneously with the instant Motion to Strike.  Dkt. 57.  They did not do so then and present no credible reason to do so now.

Likewise, Plaintiffs' request to reopen discovery to take the deposition of Beagle is a waste of resources without justification.  This is particularly troubling where Plaintiffs have ***never*** deposed Beagle or anyone else in the three-and-a-half years since this case has been pending.  If Plaintiffs wanted to depose Beagle, the time to do so was during the discovery period.  Plaintiffs elected not to do so.  That was a litigation tactic, and seeking leave to reopen discovery after dispositive motions have been filed to obtain deposition testimony they never sought is prejudicial.

### C. Plaintiffs' evidentiary objections should be overruled.

Plaintiffs object as hearsay to Beagle's testimony that Broussard "understood the purpose" of Beagle consulting him, which included sending calculations for a proposed pay plan, was to comply with the Fair Labor Standards Act ("FLSA").  Dkt. 57 at pp. 3-4.  First, Beagle does not

---

[1] Plaintiffs can hardly feign surprise when the pay records Plaintiffs challenge were produced *separately* during the discovery period.

15545491

attempt to offer an out of court statement, as nothing is attributed to anything Broussard said. Instead, Beagle describes his present sense of impression that Broussard understood him to be seeking legal counsel—as Beagle expressly indicated to Broussard in an email—"to ensure we fall within FLSA boundaries." Dkt. 43, Ex.7 at pp. 2-3. Third, Broussard confirmed his understanding and testified:

> Q: (By Mr. Stukenberg) Mr. Broussard, you mentioned that you spoke with Mr. Beagle in order to be compliant with the Fair Labor Standards Act: is that right?
>
> A: That's correct.
>
> \*\*\*
>
> Q: What did you understand Mr. Beagle's intent to be in seeking your advice related to these Puerto Rico issues?
>
> A: Um, when -- in conversations with Jeff [Beagle], the idea was trying to get it right. Um, trying to make sure that they were in compliance with the Fair Labor Standards Act, um, and the applicable laws in Puerto Rico. That was my understanding….

*Id*. at Ex.3, pp. 35:17-21, 36:19-37:1. Both Broussard's and Beagle's statements are admissible and thus may be considered at summary judgment. *Ford*, 102 F.4th at 325.

Plaintiffs also object as hearsay and move to strike the chart in Beagle's Declaration that summarizes the calculations he arrived at to establish the pay rates Plaintiffs received in Puerto Rico. Dkt. 57 at p. 4. This is not hearsay. This is Beagle explaining the process he utilized to develop the pay plan. Nothing about Beagle explaining the math he used to establish hourly and overtime rates based on a targeted number of hours worked constitutes hearsay. Beagle explaining the process he used to develop and implement the challenged pay plan is not hearsay – it is Beagle explaining how Beagle derived the pay plan and pay rates. *See* Fed. R. Civ. P. 56(c)(4).

4

15545491

Additionally, Plaintiffs take aim at the chart by arguing that Beagle did not send the exact chart to Broussard, but this contention, while correct, is a red herring. As a point of clarification, Beagle presented Broussard with calculations similar to those in his Declaration but with 11-hour shifts worked per day (instead of 16 hours) and consequently different hourly and overtime rates to achieve the budgeted rates as set forth below:

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Title | Days Per Week | Hours Per Day | Total Hours | Reg | OT | Adjusted OT Hours | Total Hours Adjusted | Budget Day Rate | Gross Weekly at Day Rate | Implied Hourly Rate | Check Figure |
| 2 | Foreman | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 1,250.00 | $ 8,750.00 | $ 91.62 | $ 8,750.00 |
| 3 | J Lineman | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 1,000.00 | $ 7,000.00 | $ 73.30 | $ 7,000.00 |
| 4 | A Class | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 900.00 | $ 6,300.00 | $ 65.97 | $ 6,300.00 |
| 5 | B Class | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 800.00 | $ 5,600.00 | $ 58.64 | $ 5,600.00 |
| 6 | Hot apprentice | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 700.00 | $ 4,900.00 | $ 51.31 | $ 4,900.00 |
| 7 | Apprentice/Groundsman | 7 | 11 | 77 | 40 | 37 | 55.5 | 95.5 | $ 600.00 | $ 4,200.00 | $ 43.98 | $ 4,200.00 |

*See* Exhibit A (highlight in original).[2] But the calculations Beagle provided to Broussard are offered to illustrate the concept underpinning the chart in Beagle's Declaration: Beagle developed hourly rates with overtime to achieve the budgeted rates based on an assumed number of hours worked per week. *See* Dkt. 44 at p. 11. The numbers are irrelevant – the point is the methodology of the pay plan, which is what Broussard approved. Using this methodology that Broussard approved, Beagle ultimately adopted a 16-hour shift and the rate schedule set forth in his Declaration. *See id.*

Plaintiffs' objection as hearsay to Beagle's testimony that Broussard approved the pay plan after reviewing the methodology should be overruled. Dkt. 57 at p. 4. Again, Beagle provided Broussard with calculations for an hourly pay plan methodology. Beagle's testimony that Broussard approved of the hourly plus overtime methodology is being offered to show the effect it had on Beagle; namely, Beagle's state of mind that the pay plan was legal. This testimony is particularly relevant when the core issue is whether Defendants acted willfully to allegedly violate

---

[2] The formulas in the native Microsoft Excel file are as follows: (1) Column K (Implied Hourly Rate) = Column J (Gross Weekly at Day Rate) / Column H (Total Hours Adjusted). (2) Column H (Total Adjusted Hours) = Column G (Adjusted OT Hours) + Column E (Regular Hours)]). Column G (Adjusted OT Hours) = Column F (OT) *1.5.

the FLSA.  Beagle's testimony is based on his understanding from his interactions with Broussard that the methodology was complaint.

To be sure, Broussard testified that he believes that an hourly with overtime pay plan, like the one Defendants adopted, can be achieved lawfully by taking a budgeted level of compensation and determining an hourly rate plus overtime based on an assumed number of hours worked.  Dkt. 41-6 at p. 11.  As explained above, Beagle adopted a plan using this methodology, which Broussard testified that he, even now, believes is FLSA-compliant.  *Id*.

In sum, Plaintiffs' arguments that Beagle's testimony should be stricken have no basis. Beagle's Declaration does not contain hearsay or statements "that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham'" to support striking his testimony.  *See Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019); *see also Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-94 (5th Cir. 1980).  In the absence of Plaintiffs' evidence showing markedly inconsistent testimony (and there is none), the Court should decline Plaintiffs' request to strike Beagle's testimony in paragraphs 5-7 of his Declaration.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion to Strike (Dkt. 57).

<table>
<tr><td>

**DATED:** August 30, 2024

</td><td>

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ William R. Stukenberg*
William R. Stukenberg, *Attorney-in-Charge*
Texas Bar No. 24051397
Federal I.D. No. 55792
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6611
Facsimile: (713) 226-6211
wstukenberg@porterhedges.com

***Attorney-in-Charge for Defendants
Mammoth Energy Services, Inc.
d/b/a Cobra Energy, 5-Star and
Higher Power Electrical, LLC***

</td></tr>
</table>

Of Counsel:

M. Harris Stamey
State Bar No. 24060650
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6619
Facsimile: (713) 226-6219
hstamey@porterhedges.com

Jamie L. Houston
State Bar No. 24097847
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6608
Facsimile: (713) 226-6208
jhouston@porterhedges.com

Emil M. Sadykhov
State Bar No. 24110316
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6720
Facsimile: (713) 226-6320
esadykhov@porterhedges.com

***Attorneys for Defendants
Mammoth Energy Services, Inc.
d/b/a Cobra Energy, 5-Star and
Higher Power Electrical, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via CM/ECF filing on August 30, 2024.

/s/ *Jamie L. Houston*
Jamie L. Houston

15545491