IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AARON MALDONADO, *et al.*, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | |
| § | Case No. 5:21-cv-00085-OLG |
| MAMMOTH ENERGY SERVICES, § | |
| INC., COBRA ACQUISITIONS, LLC, § | |
| HIGHER POWER ELECTRICAL, LLC, § | |
| and 5 STAR ELECTRIC, LLC, § | |
| § | |
| *Defendants*. § | |
| § | |
| § | |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Mammoth Energy Services, Inc. ("Mammoth"), Cobra Acquisitions, LLC, ("Cobra"), Higher Power Electrical, LLC ("HPE"), and 5 Star Electric, LLC ("5 Star") (collectively, "Defendants") file this Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Docket Number 54).

**SUMMARY OF THE ARGUMENT**

Plaintiffs' claims are time barred by the applicable two-year statute of limitations, which applies to FLSA unpaid overtime compensation claims. However, if an employer's statutory violation was willful, a three-year statute of limitation applies. 29 U.S.C., § 255(a). Here it is undisputed that all Plaintiffs have only a third year claim and so they must demonstrate Defendants willfully violated the FLSA to survive summary judgment.

Setting aside the underlying plan is lawful, the Court need only determine if Plaintiffs carry their burden to show Defendants intentionally violated the law. The summary judgment evidence conclusively establishes that Defendants consulted outside counsel in development of their pay

1

plan. Plaintiffs' contentions that Defendants knew, or recklessly disregarded advice of counsel, are unsupported by any credible evidence. Plaintiffs have no evidence that Defendants acted willfully, and conjecture otherwise fails to raise a fact issue. Thus, Defendants are entitled to summary judgment on this issue that Plaintiffs' claims are time-barred by the applicable two-year statute of limitations.

## ARGUMENT AND AUTHORITIES

### I.   All the Evidence Supports a Finding That the Defendants Did Not Act Willfully.

The evidence in this case supports the fact that the Defendants did not act willfully and instead relied on the advice of counsel to comply with the FLSA and had no indication whatsoever that the pay plan allegedly violated the FLSA, a contention Defendants still vehemently dispute. A willful violation requires a showing that the employer either "knew or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 238 (5th Cir. 2016) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988)). Consistent with the evidence in the case, the Plaintiffs fail to meet this evidentiary hurdle.

#### A.   Defendants retained outside counsel to review their proposed pay plan.

If the pay plan were deemed to be improper by the Court, which Defendants dispute, Plaintiffs have not pointed to any evidence that the Defendants intentionally or recklessly violated the FLSA. Defendants had no obligation to consult outside counsel, Mr. Steve Broussard, but did so anyway to ensure compliance with the FLSA. Defendants consulted counsel to ensure the plan was lawful – the antithesis of intentionally violating the law.

As Plaintiffs implicitly acknowledge, Broussard endorsed the hourly with overtime pay plan Defendants selected and never advised against paying bonuses. Plaintiffs' contention that Defendants acted willfully is not supported by any evidence that Defendants knew or recklessly

disregarded that the pay plan violated the FLSA.  Plaintiffs rely almost entirely on the deposition testimony of an HR Specialist from Mammoth Energy, Inc., Mr. Alexander Kalman, to support their assertion that the Defendants paid a daily rate.  Plaintiffs cite to the testimony from Kalman to suggest that Defendants "admitted" to "finding a way around" the FLSA.

Kalman, who has not been designated as an expert, expressed an inadmissible "opinion" in stating that he believed that Defendants "were paying day rates and they were finding their way around it."  *See e.g.*, *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment").  Kalman was no more than a low-level HR Specialist and not an officer of Mammoth with the ability to bind the company.  *See Brock v. Claridge Hotel and Casino*, 711 F. Supp. 779, 783 (D.N.J. 1989).  The evidence shows that Kalman was not involved in the discussions with Broussard to develop the plan, so his "opinion" is based on nothing more than speculation and does not constitute an "admission" by the Defendants and should not be considered by the Court for any purpose.

Even if considered, Kalman's uninformed opinion does not change the facts.  Beagle and Layton contacted counsel to develop a compliant pay plan, received advice from counsel that paying hourly plus overtime based on a targeted number of hours to pay a targeted level of compensation was lawful, and implemented the plan contemplated by the discussions with counsel.  Plaintiffs make no effort to dispute these facts.  And Kalman, who had no role in the development or implementation of the plan, offers nothing but speculation that fails to change these facts.

**B. Defendants followed the advice of counsel in implementing their pay plan.**

Despite Plaintiffs' protestations to the contrary, Beagle's Declaration and Broussard's testimony are clear.  Broussard approved two pay plans, and one of which was disseminated by Mr.

3

Beagle.  *See* Plaintiffs' Response to Defendants' Motion for Summary Judgement (Docket No.54) at p. 6; Jeff Beagle's Declaration, Ex. 2. p. 7 (Docket No. 44 at p. 11).  Defendants' proactive actions in investigating the legality of its compensation plan and consulting and relying on the advice of counsel to develop it, while not required, are sufficient to support a finding that they did not act willfully.  *See Ikossi-Anastasiou v. Bd. of Supervisors of La. St. Univ.*, 579 F.3d 546, 553 (5th Cir. 2009) (finding no evidence of willful conduct in absence of evidence employer actually knew that pay structure violated the FLSA or that it ignored or failed to investigate complaints).

### C.  Defendants properly paid overtime.

Plaintiffs continue to claim that the process utilized by Defendants of setting the regular rate was improper because Beagle used a budget and "reverse engineered hourly rates for all linemen in Puerto Rico…." *See* Plaintiffs' Response to Defendants' Motion for Summary at p. 10. (Docket No. 54). Defendants fully responded to this argument in Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment. (Docket No. 55) at pp. 15-16.  Even if construed as apportioning or paying a flat rate, Defendants' pay plan properly compensated Plaintiffs at the same regular and overtime rate that did not vary from week to week because Plaintiffs worked the same number of hours each week. *Id*. at p. 15.  But more importantly for this Motion, it has no bearing on whether the Defendants knowingly or intentionally violated the law.

### D.  The most obvious indication that Plaintiffs were not paid a day rate is the fact that their compensation generally did not equal whole numbers.

Again, Plaintiffs claim that "Defendants themselves caused this discrepancy about which they now complain by reverse engineering Plaintiffs' Day rates." (Docket No. 54) at p. 10. This argument was fully addressed in Defendants' Motion for Summary Judgment (Docket No. 43) at p. 9, by using Named-Plaintiff Aaron Maldonado's own pay records.  While Defendants

4

dispute that the plan was a day rate, it ultimately is not relevant to the issue before the Court – did Defendants know the plan was unlawful and nevertheless implement the plan anyway.

### E.  Plaintiffs' bonuses were discretionary and do not violate the FLSA.

Plaintiffs next complain that the bonuses they received should have been included in the regular rate because they were allegedly not discretionary. *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment (Docket No. 54) at p. 12. As fully addressed in Defendants' Motion for Summary Judgment (Docket No.43) at pgs. 10-12, discretionary bonuses were paid to Plaintiffs only in limited circumstances to maintain morale, usually when they were unable to work a full week when leaving form or arriving in Puerto Rico.  Plaintiffs take gratuitous aim at Mark Layton to suggest that the bonuses were not to maintain morale, but there is no evidence to the contrary. The Defendants' evidence fully supports that the bonuses were lawful, completely discretionary, and properly excluded from the regular rate.  *See* 29 C.F.R. § 778.211.

To try and avoid the overwhelming evidence supporting the discretionary nature of the bonus payments, Plaintiffs move to strike[1] and further complain that Defendants "cherry pick[ed] records" that are "irrelevant" from workers who are not parties to this lawsuit to include in their Motion for Summary Judgment.  Such complaint should fall on deaf ears, considering in Plaintiffs' Motion for Partial Summary Judgment, (Docket No. 41), Plaintiffs rely almost exclusively on evidence taken in another case (*Cantu, et al v. Mammoth Energy Servs. et al.*, C.A. No. SA:19-cv-00615-DAE (W.D. Tex.)) ("*Cantu*"). *See also* Defendants' Response to Plaintiffs' Motion to Strike, (Docket No. 58).  In addition, all such records that Plaintiffs move to strike were properly and timely produced in discovery in this case.

---

[1] Plaintiffs repeat the same argument in their Response to Defendants' Motion for Summary Judgment as they do in their separately filed Motion to Strike (Dkt. 57).

Plaintiffs next suggest that the Defendants' argument on the discretionary bonus payments is contrary to or "flies in the face of" the testimony of JD Kinsey, the Payroll Manager for Cobra who processed payroll for the lineman working in Puerto Rico. (Docket No. 44), Plaintiffs' Response to Defendants' Motion for Summary Judgment at pp. 12-13.  What Plaintiffs failed to tell the Court was that Mr. Kinsey, an aggrieved former employee, who was responsible for entering time in the payroll system, would on a few rare occasions shortcut the payroll procedures and enter a hard code for an amount of money instead of entering the number of hours worked to generate that amount of pay. *See Cantu*, Ex. 2, Layton Depo, at 141:5-21.  Kinsey's errors resulted in overpayments to employees.  Tellingly, Mr. Kinsey was ultimately terminated for these very errors. *Id.* at 141: 17-24.  *See* Defendants' Motion for Summary Judgment (Docket No. 43) at p. 12, for one instance where Kinsey hard coded $1,000.00 for the Named-Plaintiff Maldonado instead of entering the hours he worked during his shifts of May 14, 2018, through May 20, 2018.  The few isolated instances where Plaintiffs' pay records indicate that they erroneously received a day rate were not approved and are why Kinsey was terminated.

But more importantly, Kinsey's payroll errors (however characterized) and whether the bonuses qualify as excludable discretionary payments is not relevant to the issue before the Court. The issue is willfulness – even if the extra payments were not discretionary or Kinsey used a day rate code does not establish that the Company knew it was violating the law and kept doing so anyway.  *See Alvarez v. NES Global LLC*, 2023 WL 9111908, at *10 (S.D. Tex. Dec. 29, 2023) (explaining defendant failed to pay a "guaranteed" retainer on several occasions but "find[ing] that these instances of underpayment are not sufficient evidence on their own to support a finding that [d]efendant recklessly or knowingly failed to pay [p]laintiffs on a salary basis.").  In addition, there is no evidence that anybody with authority to enforce the pay plan implemented by Defendants acted

6

willfully. Defendants genuinely believe that the pay plan is lawful. As Judge Ezra explained, "a reasonable jury could find that Plaintiffs were paid either a day rate or an hourly rate." *Cantu*, 2023 WL 368170, at *5. Where the legality is a "close call," *id*., a willfulness finding should not apply. *See Fabela v. AT&T Communs. Corp.*, 2007 WL 3310714, at *2 (W.D. Tex. Oct. 30, 2007) ("[W]here a legitimate disagreement may exist regarding the FLSA's application to a specific set of facts, a court should be reluctant to find a knowing violation of the FLSA.").

In summary, Plaintiffs have no evidence that Defendants "knew or showed reckless disregard for … whether [their] conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. There is no evidence of employee complaints. There is no evidence that Defendants were warned that the pay plan could potentially violate the FLSA. There is no evidence of a prior Department of Labor investigation. There is no evidence of previous litigation regarding the validity of the pay plan. Providing the Defendants violated the law (which they didn't) is not enough – Plaintiffs must present evidence that the Defendants knew they were violating the law. And here Plaintiffs fall woefully short.

**Given the absence of evidence of willfulness, Defendants are entitled to summary judgment.** *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) ("Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention.") *See also Singer v. City of Waco, Tex.*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding jury willfulness finding where employer admitted knowing that employees were paid incorrectly and attorney advised employer not to investigate); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (affirming district court's finding of willfulness where the employer was notified by a government representative that its pay practices violated the FLSA but employer took no steps to investigate).

## CONCLUSION

The summary judgment evidence conclusively establishes that the Defendants consulted outside counsel in developing their pay plan. Plaintiffs have no viable evidence that Defendants acted willfully. Thus, the Court should grant Defendants' Motion for Summary Judgment that Plaintiffs' claims are barred by the two-year statute of limitations.

Dated August 30, 2024.

Respectfully submitted,

By: /s/ William R. Stukenberg
William R. Stukenberg
Attorney-in-Charge
Texas Bar No. 24051397
Federal I.D. No. 55792
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6611
Facsimile: (713) 226-6211
wstukenberg@porterhedges.com

*Attorney-in-Charge for Defendants Mammoth Energy Services, Inc. d/b/a Cobra Energy, 5-Star and Higher Power Electrical, LLC*

OF COUNSEL:

Eugene M. Nettles
State Bar No. 14927300
Telephone: (713) 226-6609
Facsimile: (713) 226-6209
enettles@porterhedges.com
M. Harris Stamey
State Bar No. 24060650
Telephone: (713) 226-6619
Facsimile: (713) 226-6219
hstamey@porterhedges.com
Jamie L. Houston
State Bar No. 24097847
Telephone: (713) 226-6608
Facsimile: (713) 226-6208
jhouston@porterhedges.com
Emil M. Sadykhov
State Bar No. 24110316
Telephone: (713) 226-6720
Facsimile: (713) 226-6320
esadykhov@porterhedges.com
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas  77002

*Attorneys for Defendants*
*Mammoth Energy Services, Inc.*
*d/b/a Cobra Energy, 5-Star and*
*Higher Power Electrical, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via CM/ECF filing on August 30, 2024.

/s/ Jamie Houston
Jamie L. Houston

15545704v1